# CHARLESTON.

WEST VIRGINIA ARCHITECTS AND BUILDERS v. STEWART.

Submitted February 22, 1910.   Decided January 24, 1911.

1. EVIDENCE—DOCUMENTARY—*Books of Original Entry.*
     Books of original entry of a contractor and builder kept by a bookkeeper, who, according to an established system or method of transacting the business, records the oral or written reports made to him by one or more persons in the regular course of business, of transactions lying in the personal knowledge of the latter, whether such bookkeeper have personal knowledge of such transactions or not, are admissible in evidence in connection with the testimony of such bookkeeper showing the regularity of the entries therein by him, to prove an account therein, without the evidence of the witnesses having personal knowledge of the transactions, provided the testimony of such witnesses, because of death, interest, incompetency, absence, inconvenience, or otherwise be unavailing.

2. APPEAL AND ERROR—*Review—Questions not Ruled on Below.*
     Where on demurrer to the evidence the court below has not ruled on the question of excessiveness of the conditional verdict of the jury, this Court will consider only the question whether the evidence sustains plaintiff's right to damages.

Error to Circuit Court, Cabell County.

Action by the West Virginia Architects & Builders against Mary W. Stewart. Judgment for defendant, and plaintiff brings error.

*Reversed and Judgment Rendered.*
68 W. Va.

*George S. Wallace,* for plaintiff in error.

*Wyatt & Graham* and *C. W. Freeman,* for defendant in error.

MILLER, JUDGE:

The court below sustained defendant's demurrer to plaintiff's evidence, and entered judgment thereon for demurrant. Defendant offered no evidence except her own to the effect that as executrix she had found among decedent's papers no account or memorandum showing any indebtedness to plaintiff. On cross examination, however, she admitted, that as far as she knew decedent kept no regular books of account with individuals.

The action was *assumpsit,* plaintiff demanding of decedent's estate, a balance alleged to be due it on account growing out of contracts to build certain houses, barns, &c.

Plaintiff offered as witnesses to prove the account Miss Dickey, its bookkeeper and stenographer, and also McNulty, its president and general manager. Miss Dickey proved that she was the bookkeeper and stenographer of plaintiff during the time covered by the account sued for; that she kept the books of plaintiff and made the entries in the account against decedent in the regular course of business, and that decedent in his life time was indebted to plaintiff in the sum of $415.54, the balance sued for. In connection with her testimony, the ledger, the book of original entry, was also offered and admitted in evidence. The witness also testified that she had seen the contract between plaintiff and decedent to do the work covered by the account; that she had made up from the book statements of the account against decedent in his life time, and mailed them to him, and that if he had ever disputed the account it had not come to her knowledge. On cross examination, however, the witness admitted that she had no personal knowledge of the correctness of the several items in the account, except that she had kept them on file as they had been turned in to her, and that she had made the entries from information given her by McNulty, and by one Wine, whom she describes as partner and foreman.

McNulty was offered as a witness to supplement the testimony of the bookkeeper, but defendant objecting thereto, his evidence was excluded so far as it related to personal trans-

actions with decedent in his life time, as incompetent because of interest. For the proposition that directors and stockholders of a corporation are incompetent witnesses in such cases, *Development Co.* v. *Thornburg,* 46 W. Va. 99 is cited.

The only question presented for decision is, did the court below err in its judgment on the demurrer to the evidence? Plaintiff did prove by McNulty, also by Taylor, who had been president and manager, that Miss Dickey was bookkeeper, and that it was customary for all items of business to be turned into the office and to be kept by her; and by McNulty, on cross-examination, defendant proved that after the item, to check $375.00, charged in the account, he had in his own handwriting, about the time of the entry by Miss Dickey, written the words "money loaned". On re-direct examination the check with indorsements was, without objection, admitted in evidence.

The rule promulgated in our recent decisions is that, "upon demurrer to evidence by defendant, if the plaintiff's evidence is sufficient to sustain his case, oral evidence of the demurrant conflicting with that of the demurree is ignored, and the demurrer overruled, unless the oral evidence of the demurrant be so clearly preponderant over that of the demurree that a verdict for the demurree would be set aside." *Butcher* v. *Sommerville,* 67 W. Va. 261 (67 S. E. 726, 729), and cases there cited.

By her demurrer to the evidence defendant has apparently staked her defense upon the proposition that the evidence of Miss Dickey was lacking in the essential requisite of personal knowledge of the transactions, entered by her, to render her testimony in connection with the books legal and competent evidence as against defendant of the truth of such entries. The general rule undoubtedly is, as stated in *Vinal* v. *Gilman,* 21 W. Va. 301, that to render such entries legal and competent evidence, the book of account must be, (1) a book of original entry; (2) the entry co-temporaneous, or practically so, with the transaction; (3) it must be made in the regular course of one's business or employment, and, (4) the entrant must have had personal knowledge of the transaction. See also 1 Elliott on Ev., section 455, *et seq.;* 17 Cyc. 391, *et seq.*

It is not claimed the plaintiff's evidence was lacking in any of these requisites, except the fourth. Did this want of personal knowledge on the part of Miss Dickey, under all the facts

and circumstances disclosed by the record, justify the judgment
of the court on the demurrer to the evidence? It must be con-
sidered in answering this inquiry that the evidence of McNulty,
who could and would have supplemented that of Miss Dickey,
was excluded. The evidence of Taylor and Wine would have
been incompetent and unavailable for the same reason. In
such cases there seems to be a well recognized exception to the
general rule. Elliott on Ev., section 462, says: "The person
making the entry must usually have personal knowledge of the
fact recorded; but where the party making the entry does so
upon the statement or report of some employe or other person the
entry may, nevertheless, be admissible. As to this the courts
in some jurisdictions maintain that such other person must be
called as a witness, while others maintain that if he can not be
produced as a witness still the entry is admissible." But, says
this writer in the same section: "The prevailing doctrine is
well illustrated in a Federal case in which it is held that an
entry made without personal knowledge on information given
by another, whether orally or by memorandum written for con-
venience in aid of the latter's memory, is inadmissible unless
supplemented by the testimony of the latter, and that it cannot
even be used to refresh the memory of the person who made the
entry for the obvious reason that he had no personal knowledge
of the facts recorded by him." The illustrative Federal case
cited is *Chicago Lumbering Co.* v. *Hewitt,* 64 Fed. R. 314,
before Taft and Lurton, circuit judges, opinion by the latter,
in which it was held that a book in which one person sets down
the total amount of logs scaled from memoranda furnished him
by another person, who did the work, was not admissible to
prove the amount of logs scaled, unless supplemented by the tes-
timony of the person furnishing the data. In this case it was
proven that Foley who did the scaling of the logs and furnished
the data to McFadden, who made the entries, could not be found
so as to obtain his testimony in regard to said scale. The book
in question here, however, was not in any legal sense a book of
account kept by a tradesman. The cases cited and mainly relied
on by the court in this case are *Bates* v. *Preble,* 151 U. S. 157;
*Chaffee* v. *U. S.,* 18 Wall. 516, and *Insurance Co.* v. *Weide,* 9
Wall. 677. In *Bates* v. *Preble,* the question was whether cer-
tain memoranda schedules of securities, kept by plaintiff in her

box, supplemented by her oath that they were her original entries and that they were correct, were admissible as independent evidence. The general rule was not questioned, but admitted, that books of account kept in the usual course of business, when supplemented by the oath of the party who kept them may be admitted in evidence; but the question whether this rule extends to memoranda such as that involved in that case, and to which the decisions are in great conflict, is discussed with reference to those decisions, but not distinctly decided for, at page 157, Mr. Justice Brown says: "But even if it were conceded that such a memorandum as that in question made cotemporaneously with the deposit of securities, and properly authenticated by oath of the plaintiff, would be admissible as independent evidence, the testimony of the plaintiff fell far short of establishing the requisite qualifications for its admission. It does not appear when the memorandum was made or that it was co-temporaneous with the deposit of the securities. Upon the other hand, it seems the entries were made from time to time, though not apparently as the securities were deposited in the box. Indeed, the plaintiff swears directly that she could not tell when she made the entries upon them, or when the figures were set down; that she could not tell why she made the entries, or why she struck out any of them, and that the entries were not reliable," &c. "Upon the whole" says the court, "we think these memoranda, if inadmissible for no other reason, were not sufficiently authenticated to make it proper to submit them to the jury." In *Chaffee* v. *U. S.*, the question was whether certain certificate-books of canal collectors, from memoranda, reports or way bills furnished by the captains of the boats, of whiskies on board, the collectors having no personal knowledge of the truth of the statements contained in the certificates, were admissible. The Court by Mr. Justice Field, holding the books inadmissible, said: "The books were not public records; they stood on the same footing with the books of the trader or merchant. The fact that the lease was from the State did not change the character of the entries made by the collectors, who were simply agents of the lessees, and not public officers of the State. Their admissibility must, therefore, be determined by the rule which governs the admissibility of entries by private parties in the ordinary course of their bus-

iness." "And that rule", says the court, in the following para-
graph "with some exceptions not including the present case,
requires, for the admissibility of the entries, not merely that
they shall be contemporaneous with the facts to which they re-
late, but shall be made by parties having personal knowledge
of the facts, and be corroborated by their testimony, if living and
accessible, or by proof of their handwriting, if dead, or insane,
or beyond the reach of the process or commission of the court.
The testimony of living witnesses personally cognizant of the
facts of which they speak, given under the sanction of an oath
in open court, where they may be subjected to cross-examina-
tion, affords the greatest security for truth. Their declarations,
verbal or written, must, however, sometimes be admitted when
they themselves cannot be called, in order to prevent a failure of
justice. The admissibility of the declarations is in such cases
limited by the necessity upon which it is founded." The court
in this case did not deem it important to cite at length author-
ities for the rule, and its limitations as stated, but does cite and
comment on some cases, illustrating to some extent recognized
limitations upon the general rule, among them *Nicholls* v. *Webb,*
8 Wheat. 326, and *Insurance Co.* v. *Weide, supra.* And Mr.
Elliott, in note 36 to section 462, *supra,* cites, among other cases,
for what he says is the prevailing doctrine, *Little Rock Granite
Co.* v. *Dallas Co.,* 66 Fed. R. 522, holding that the fact that the
person furnishing the data for the entry was out of the jurisdic-
tion of the court, or could not be found furnished no exception
to the general rule; also *Taylor-Woolfenden Co.* v. *Atkinson,*
(Mich.) 87 N. W. 89, and *Swan* v. *Thurman,* 112 Mich. 419, 70
N. W. 1023, the former following the latter case, the latter hold-
ing that book entries of charges for goods against a customer,
made by a bookkeeper who had no personal knowledge of the sale
or delivery of the goods, but who made his entries from slips fur-
nished by the saleswoman in the store, are not rendered admis-
sible in evidence to prove the account by the testimony of the
bookkeeper alone; the former holding that where such entries
were made from slips made out in duplicate by the clerks who
made the sales, and one of them sent to the bundle counter, and
the other to the bookkeeper, it was necessary in order to make
the book admissible, for plaintiff to prove, to the satisfaction of
the jury, that no entry was made except from slips, and that

no slips were sent to the bookkeeper, except when the goods, accompanied by a duplicate slip, were sent to the bundle counter, and that all goods sent to the bundle counter were delivered. In the same note Mr. Elliot cites *Donovan* v. *Boston & Maine R. Co.* (Mass.) 33 N. E. 584, remarking that the Massachusetts court, which is one of the leading exponents of the general doctrine, has refused, in a strong opinion, to extend it so as to exclude telegraphic entries on a train dispatcher's train sheet, where the entrant was produced, although one of the station operators from whom he received some of the messages was not produced, citing also *Mayor, &c. of N. Y.* v. *Second Ave. R. R.,* 102 N. Y. 572. And we have also been cited by counsel in this case to *Fireman's Ins. Co.* v. *Seaboard Air Line Ry.* (N. C.), 50 S. E. 452, following the Massachusetts case, and holding that in an action against a railroad company for burning cotton, when it became material to show at what time defendant's wrecking train reached a certain station on the day in question, the dispatcher's train sheet for that day, kept in the usual course of business, and on which the dispatcher testified that he marked the time of the arrival and departure of the train as telegraphed to him by the operator at the station, was admissible in evidence. The only way in which the Massachusetts court undertook to distinguish the *Donovan Case* from cases holding inadmissible certain shop book entries, is as noted by the North Carolina court, the *Fireman's Ins. Co. Case,* that "no entries were transferred to the dispatcher's sheet from the sheet kept by the East Summerville Station"; that "as telegraphic messages are read by sound, as well as automatically recorded in symbols, these entries stand upon the same footing as if made from oral statements uttered at the indicated station and audible in the dispatcher's office." The reasoning of the Massachusetts court, which the North Carolina court says is so satisfactory to their minds, that they quote it, is as follows: "It is clear that the sheet was worse than useless if its statements, as seen by the dispatcher, were not accurate. Every interest of the defendant demanded that an entry, when made, should be true, and no reason can be conceived why the defendant should procure or permit a false or incorrect entry to be placed under the eye of the official who controlled the movement of its trains; nor is there any reason to presume that the operator who observed the passing of the train

at the station and telegraphed the information to the dispatcher's office, or the person who there received the messages and made the entries on the sheet, had any interest to mistake the facts or to make false entries. The system was the established course of the defendant's business, so that the sheet was not an accidental memorandum, and every step by which the information spread upon it was gathered, transmitted, and entered was an act performed by some person in the line of his duty and in the usual course of his employment, under a sanction tending to make his statements true, and these acts were so connected with and dependent upon each other as to form parts of one transaction." It will be observed from this quotation that the Massachusetts court, as did the North Carolina court, places stress upon the fact that the system of making the entries was the established course of defendant's business, so that the sheet was not an accidental memorandum. In *Diament* v. *Colloty,* (N. J.), 49 Atl. R. 445, the New Jersey court holds upon the same principle, that a book account made up in the usual course of business in part from reports of work done and amount of materials used is competent evidence, in connection with the reports, as part of a system of carrying on business, to prove a claim for materials and labor. The New Jersey court says: "The slips cannot be regarded as a book of original entry. They were in reality no more than memoranda, which might be used by a witness for the purpose of refreshing his memory, but could not, of themselves, standing alone, be competent evidence of the facts therein contained, and, if nothing else appeared, their admission would have been error. But they were a part of the system under which the plaintiff conducted his business.

"The daybook was competent evidence. The entries therein appear to have been made within a reasonable time after it was ascertained what the proper charges were against the defendant. The work in question was carried on at a long distance from the plaintiff's store and place where his books and bookkeeper were, and the items of materials and labor might not be ascertained so as to be capable of proper entry in any book as a charge against the customer until some time after the job was completed. The entries in this book appear to have been made in the usual course of business, according to the system and method adopted by the plaintiff. The entries were made in the daybook

from information derived largely from these slips or reports, and, the book being competent evidence, the slips, as the source of the information, together with the ledger, which was a condensation of the day book, all forming together part of a system of carrying on business, all became competent testimony when all were admitted in evidence. We find no error in the admission of the slips and daybook."

Can the case we have here be brought within any recognized exception to or limitation upon the general rule? 2 Wigmore on Ev., section 1530, referring to section 1522, for a discussion of the circumstantial guarantee of truthworthiness, contains a full discussion of the subject of these exceptions and limitations, too long for quotation, but to which reference is made for the learning on the subject. He there shows by reference to the judicial decisions, some of which have already been cited by us, how in the event either the entrant with or without personal knowledge of the transaction, or the one with such personal knowledge and on whose information, oral or written, the entry was made, or both, be dead or unavailable as witnesses, the entry being shown to have been made in the usual course of business and according to an established custom of conducting the business, the element of personal knowledge is thereby supplied, rendering the entry available as legal evidence, on principles of necessity, or inconvenience in obtaining the witnesses. "The conclusion is, then," says this writer, "that where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry under the present exception, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility of doing so." And as a reason for recognizing and applying the exception where applicable, this writer says: "Why should not this conclusion be accepted by the courts? Such entries are dealt with in that way in the most important undertakings of mercantile and industrial life. They are the ultimate basis of calculation, investment, and general confidence in every business enterprise; nor does the practical impossibility of obtaining constantly and permanently the veri-

fication of every employee affect the trust that is given to such books. It would seem that expedients which the entire commercial world recognizes as safe could be sanctioned, and not discredited, by courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly be one rule for the business world and another for the court room. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who as attorneys have already employed and relied upon the same methods. In short, courts must here cease to be pedantic and endeavor to be practical." The writer follows this statement of the principle by quotations from and citations in foot notes of numerous judicial decisions sanctioning and applying the principle. It is wholly unnecessary to do more than refer to this discussion of the subject by that writer. In *Insurance Co.* v. *Seaboard Air Line Ry., supra,* the North Carolina court quotes at length and approvingly from this section in Wigmore, in support of the conclusions reached in that case.

We think the principle of the exception sound, and supported by reason and judicial authority, and that it is one which ought to be recognized and applied in this case. Otherwise plaintiff, because of the death of decedent, and the objection to and the unavailability because of interest of the evidence of living witnesses, must lose what we must assume is a meritorious debt and claim against decedent's estate.

But it is urged that the books can not be received to prove the item "To check $375.00, money loaned". The business of plaintiff was not the loaning of money. This item must be regarded, we think, as a collateral transaction. The strict rule of evidence observed in most jurisdictions would perhaps exclude this item. 1 Elliott on Ev., section 467 and cases cited in note. *Smith, Ex'or.* v. *Rentz,* 131 N. Y. 169, 30 N. E. 54, 15 L. R. A. 138, holds that "A book of entries of cash transactions is not admissible under the rule admitting account books in evidence." But we need not decide this question. Plaintiff did not rely alone on the books. Without objection it was permitted to introduce the check, which showed the indorsement

of decedent, itself evidencing the transaction. And on cross-examination of McNulty, defendant proved that the witness had written in the account the words "money loaned". It was not proven in connection with the check that the signature "J. B. Stewart", on the back of the check, was his genuine signature. No objection, however, was interposed to the check as evidence on this ground, and it went in for all legitimate purposes. But what did the check, thus made and indorsed, prove? The legal implication, subject to rebuttal, seems to be that it was given in payment of a debt by drawer to payee, or as a loan by the latter to the former at the time of the execution of the check. 2 Wigmore on Ev. 539; *Terry* v. *Ragsdale,* 33 Grat. 342. Not having by any competent evidence rebutted this legal presumption, the verdict was perhaps excessive. There was no motion by the demurrant in the court below, however, to set aside the verdict as excessive. What can an appellate court, under such circumstances, do with an excessive verdict, on reversing the judgment below sustaining a demurrer to evidence? In *Uhl* v. *Railroad Co.,* 56 W. Va. 494, 509, this Court, following prior Virginia and West Virginia cases, cited at page 510, said: "Only the rulings of the trial court may be reviewed here. Upon the demurrer we can only say whether the evidence sustains plaintiff's right to the damages, for that is all the lower court considered. It was not requested to rule upon the correctness of the findings of the jury, as to the *quantum* of damages. Its action is a prerequisite to the exercise of any jurisdiction by this Court."

For the reasons given we are of opinion that plaintiff made a *prima facie* case entitling it to a submission of its evidence to the jury, and that the court below erred, as a matter of law, in sustaining the demurrer of the defendant thereto, and entering judgment for her thereon. Our judgment will be that the judgment below be reversed, that the demurrer to the evidence be overruled, and that the plaintiff recover of defendant, as such executrix, to be levied of the goods and chattels of the decedent in her hands or to come into her hands to be administered, the sum of $465.06, damages found by the jury in their verdict, with interest thereon from April 6, 1909, the date of the verdict until paid, and her costs in the Court and in the circuit court in this behalf expended.     *Reversed and Judgment Rendered.*