Staunton.

FRENCH V. VIRGINIAN RAILWAY COMPANY.

September 20, 1917.

1. DOCUMENTARY EVIDENCE—*Book Entries.*—Where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry under the exception to the hearsay rule of books of original entry, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility of doing so.

2. DOCUMENTARY EVIDENCE—*Train Sheets.*—Records of entries made in the established course of business on train sheets by train dispatchers from reports telegraphed or telephoned to them by station agents as to the time of arrival and departure of trains are admissible as evidence to indicate the location of a train at a certain time, when verified by the train dispatcher in whose office they were lodged.

3. DOCUMENTARY EVIDENCE—*Train Sheets—Case at Bar—Verification.*—In the case at bar the train sheets were verified by the claim adjuster, an employee of the defendant company, who testified that he had obtained them from the proper custody, and that they were the original train sheets.

   *Held:* That as there was nothing in the record to indicate any doubt of the fact that they were the genuine records under which the trains were operated, they were admissible. While they should have been proved by the train dispatchers who kept them, failure to do so affected, not their admissibility, but their credibility.

Error to a judgment of the Circuit Court of Giles county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*W. B. Snidow,* for the plaintiff in error.

*H. T. Hall* and *G. A. Wingfield,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

This is an action of trespass on the case to recover damages for the destruction of certain growing timber and wood by fire, alleged to have been caused by the defendant company, which resulted in a verdict and judgment for the company.

The only error assigned and relied upon by the plaintiff is the admission as evidence by the trial court of the dispatchers' register of trains of November 21, 1915, the date of the fire.

That records of entries made in the established course of business on train sheets by train dispatchers from reports telegraphed or telephoned to them by station agents as to the time of arrival and departure of trains are admissible as evidence to indicate the location of a train at a certain time, is well settled. *Louisville & Nashville R. Co.* v. *Daniel,* 28 Ky. L. Rep. 1146, 91 S. W. 691, 3 L. R. A. (N. S.) 1190; *Louisville, &c., Ry. Co.* v. *Hall,* 29 Ky. L. Rep. 584, 94 S. W. 26; *Donovan* v. *Boston, &c., R. Co.,* 158 Mass. 450, 33 N. E. 583; *Big River Lead Co.* v. *St. Louis, &c., Co.,* 123 Mo. App. 394, 101 S. W. 636; *Firemen's Ins. Co.* v. *Seaboard Air Line Ry.,* 138 N. C. 42, 50 S. E. 452, 107 Am. St. Rep. 517, 125 Am. St. Rep. 856, note; *C. & O. Ry. Co.* v. *Stojanowski,* 112 C. C. A. 310, 191 Fed. 721; *Trowbridge* v. *Kansas City, &c. R. Co.,* 102 Mo. App. 52, 179 S. W. 782.

In all of these cases, however, the train sheets were verified by the train dispatcher in whose office they were lodged. In this case they were verified by the claim adjuster, an employee of the defendant company, who testified that he had access to all of the books and records, and that he had obtained the dispatcher's register of trains for Sunday, November 21, 1915, from the division office of the company at Princeton, W. Va. He testified that the register produced was kept by the dispatcher of the said division office from information received by him from other employees of the defendant by telegraph or telephone from stations along its line, and that it was in the handwriting of three men who were the dispatchers on duty on the said date. So that the question to be determined is whether or not this document was sufficiently verified to justify its admission as evidence.

In *Seaboard Air Line Railway* v. *Railroad Commissioners*, 86 S. C. 91, 67 S. E. 1069, 138 Am. St. Rep. 1028, it was held in a proceeding by a railroad company to enjoin railroad commissioners from enforcing a freight rate, that the books of original entry are the best evidence of transactions of the company, and that it would be a practical denial of justice to require it to produce all the waybills, tickets, reports and other innumerable memoranda made by its multitude of employees; and that the books of account, kept in the regular course of business and containing the original entry of transactions, may be introduced in evidence, but the court must decide, in the first instance, what are the books of original entry, what is sufficient proof of the verity of the books, and what evidence is reasonably available to the one offering the books to prove the entries made therein; and that these questions must be left almost entirely to the discretion of the trial court.

49

In discussing exceptions to the hearsay rule and books of original entry as evidence, Mr. Wigmore uses this striking language: "The conclusion is, then, that *where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry under the present exception, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility* of doing so. Why should not this conclusion be accepted by the courts? Such entries are dealt with in that way in the most important undertakings of mercantile and industrial life. They are the ultimate basis of calculation, investment, and general confidence in every business enterprise; nor does the practical impossibility of obtaining constantly and permanently the verification of every employee affect the trust that is given to such books. It would seem that expedients which the entire commercial world recognizes as safe could be sanctioned, and not discredited, by courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly be one rule for the business world and another for the court room. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who as attorneys have already employed and relied upon the same methods. In short, courts must here cease to be pedantic and endeavor to be practical." 2 Wigmore on Ev., sec. 1530.

The train sheets of a properly operated railroad must be accurately and properly kept by the train dispatchers, or

else the lives and property of its passengers, the safety of its employees and its own property are all imperiled. Indeed, a railway cannot be operated unless the train dispatchers are kept informed as to the location and movements of its trains. Outside of the court room no one would question the value of these records, for no other practical method has been devised to prevent collisions. Were these particular train sheets sufficiently identified as the record kept by those whose duty it was to keep them? While they should have been proved by the train dispatchers who kept them, failure to do so affects, not their admissibility, but their credibility, and the vital question is not by whom they were proved, but whether or not they were the original train sheets. As the witness who was introduced testified that they came from the proper custody, that they were the original train sheets, and as there is nothing in the record to indicate any doubt of the fact, they are admissible. That the witness could testify to nothing more of his personal knowledge, does not justify their rejection as evidence, for the chief train dispatcher could hardly have testified to any other material fact, and the dispatchers who actually made the entries could have testified to no other fact than that they had made the entries in the performance of their duty, upon reports transmitted to them by the various station agents along the line.

We have here, then, the practical impossibility, on the ground of inconvenience, of producing all the persons who have contributed their knowledge in making up the various entries upon these train sheets, and we also have the circumstantial guarantee of trustworthiness growing out of the fact that the entries were made in the regular performance of duty, and that errors and misstatements in train sheets are almost certain to be promptly detected and to result disastrously. When there is this practical necessity

and this circumstantial guarantee of trustworthiness, then such records are admissible when sufficiently verified. 2 Wigmore on Ev., secs. 1521-1522.

There have been many decisions which have enforced the strictness of the common law rule in such cases. Some have required that the parties who actually made the record be produced, or their absence accounted for; others have required that the various persons (which in this case would be the station agents along the line) who made the reports upon which the records were based should testify as to the facts within their own knowledge; and still other courts have refused to admit such records under any circumstances. We believe, however, that the sound and the logical principle is indicated by Professor Wigmore, and the following cases sustain the modern and better rule: *Fielder* v. *Collier,* 13 Ga. 499; *Mississippi, &c., Co.* v. *Robson,* 16 C. C. A. 408, 69 Fed. 781; *Continental Nat'l Bank* v. *First Nat'l Bank,* 108 Tenn. 374, 68 S. W. 497, which holds that a bank's books may be verified by the cashier without calling the bookkeeper who actually made the entries; *U. S.* v. *Cross,* 20 D. C. (9 Mackey) 379; *Schaefer* v. *Railroad Co.,* 66 Ga. 39; *Chisholm* v. *Machine Co.,* 160 Ill. 101, 43 N. E. 796; *Northern Pacific R. Co.* v. *Keyes* (C. C.), 91 Fed. 47; *U. S.* v. *Venable C. Co.* (C. C.), 124 Fed. 267; *Dohmen Co.* v. *Insurance Co.,* 96 Wis. 38, 71 N. W. 68. See also, *Diament* v. *Colloty,* 66 N. J. Law 295, 49 Atl. 445, 808; *Merchants' Bank of Macon* v. *Rawls,* 7 Ga. 191, 50 Am. Dec. 398, 125 Am. St. Rep. 856, note; *Architects & Builders* v. *Stewart,* 68 W. Va. 514, 70 S. E. 113, 36 L. R. A. (N. S.) 899.

Of course extreme caution must be exercised by the trial courts and no evidence of this character should be admitted unless the document comes from the proper custodian and it is proved that it is a record kept in accordance with the established rule of business, made contemporaneously before the controversy arose, by persons under the very high-

est duty and responsibility to keep a true record. If there be any doubt as to its genuineness, the evidence should be excluded; if it be genuine, such a contemporaneous record is generally the very best available evidence of the facts it purports to record, and, because of the fallibility of human memory as to constantly recurring transactions of similar character, is frequently more worthy of credit than the testimony of witnesses undertaking to testify from personal knowledge. In each case the controlling question to be determined is whether or not the train sheets offered are the genuine record under which the trains were operated. This being settled, the court should admit the evidence, not as conclusive proof, but to be considered by the jury along with the other evidence in the case.

The discretion of the court was properly exercised, the issue involved submitted to the jury, and the judgment based on their verdict determines the case.

*Affirmed.*