CYNTHIA D. J. SMITH, ET AL.

V.

WOODLAWN CONSTRUCTION COMPANY, INC., ET AL.

Record No. 850293

April 22, 1988

Present: All the Justices

*S. W. Tucker (Hill, Tucker & Marsh,* on briefs), for appellants.

*John C. Ivins, Jr. (Barry A. Hackney; Hirschler, Fleischer, Weinberg, Cox & Allen,* on brief), for appellee Woodlawn Construction Company, Inc.

*(Harrison Bruce, Jr.,* on brief), for appellees Gordon C. Anderson, Jr. and Nancy D. Anderson. Appellees Anderson submitting on brief.

No briefs or arguments for appellees Walter Mahon, Trustee, Bowman T. Bowles, Jr., Trustee, Ronald D. Davis, Carolyn G. Davis, Ralph C. Mitchell, Trustee, W. F. Harris, Trustee, Gene T. Jones, Trustee, Richard H. Catlett, Jr., Trustee, George W. Belk, Mary P. Belk, Warner V. Brooks, Davis W. Brooks, B. T. Carter, Iris C. Carter, Junius L. Davenport, Junius L. Davenport, Jr., Lillian D. Jones, Roscoe Jones, Mattie Berry, Ervin S. Harris, Julia Harris Dabney, Joseph Lewis, Thomas R. Proctor, Leona Harris Allen, Ellis Harris, Mary L. Harris and Geshma McWilliams.

WHITING, J., delivered the opinion of the Court.

Jack Davenport, the owner of an 85-acre tract of land in Hanover County, Virginia, died intestate in April of 1941. Davenport had eight children, some of whom predeceased him but were survived by issue. In December of 1945, most of Davenport's heirs or their successors in interest attempted to partition the 85-acre tract among themselves. They had the entire tract surveyed and divided into eight parcels. They attempted to convey parcel number eight to the heirs at law of Bettie Davenport Johnson, who had predeceased her father, Jack Davenport. The conveyance was allegedly defective because it failed to include the complainants, who claimed to be the widow and two children of James Edward Johnson, one of the three children of Bettie Davenport Johnson. James Edward Johnson survived Davenport and his mother, but died before the attempted partition in kind.

James Edward Johnson's widow and two children brought this suit on August 8, 1977 and amended their bill of complaint on January 21, 1981 to ask the court to: (1) reform the deed to parcel eight by naming them as owners of a one-third undivided in-

terest therein, and thereafter partition that parcel among all the owners "in one of the modes prescribed by law"; (2) confirm the prior partitions of all remaining parcels, except parcel number four, which apparently had not been partitioned in kind to any of Davenport's heirs at law or their successors in title; and (3) partition lot number four among all the heirs at law of Davenport, or their successors in title, "in one of the modes prescribed by law." Alternatively, the complainants moved the court to partition the entire 85 acres among the heirs at law of Davenport, or their successors in title.

Woodlawn Construction Company, Inc. (Woodlawn), as well as other parties, were later joined as additional parties defendant as successors in title to some of the heirs of Jack Davenport.

In March 1982, after depositions had been taken indicating that complainants were the successors in interest to James Edward Johnson, the son of Bettie Davenport Johnson, the complainants sought a ruling by the trial court that they owned a one-third undivided interest in parcel eight. This was resisted by the owners of record of the property and, over the objection of the complainants, the matter was referred to a commissioner in chancery. The court directed the commissioner to determine: (1) whether the necessary parties were before the court; (2) who owned the real property in question; (3) whether the complainants were barred from asserting an interest in the property because of equitable defenses; (4) the value of the real property; (5) whether it was necessary to sell the real property to satisfy "any such claim as may be found to be owing to the complainant"; and (6) for other relief not germane to this opinion.

When the parties convened before the commissioner in chancery on December 14, 1982, the complainants put on evidence in support of their claim to an undivided interest in the property. They proffered a record of the Hanover County Commissioner of Revenue's assessed evaluation of the parcels, described by the commissioner of revenue as a "strip file," in an effort to prove the value of the parcels. The strip file showed only the location, acreage, and assessed value of the eight parcels. Upon objection to its admissibility, the commissioner permitted the parties to file memoranda and took the matter under advisement. Although the commissioner gave the defendants an opportunity to put on evidence in support of their defenses, the defendants offered no evidence.

On June 3, 1983, after review of counsel's subsequently filed memoranda on the issue of the admissibility of the strip file, the commissioner indicated he was prepared to submit his report as soon as he was paid his fee and costs. On July 11, 1983, the complainants, by counsel, wrote the trial court a letter in which they objected to paying any part of the commissioner's fee.

Thereafter, on November 14, 1983, counsel for the complainants endorsed "seen" an order which recited the content of the complainants' written objections to their payment of any part of the commissioner's fee. That order impliedly overruled the complainants' previous objections by directing the commissioner to withhold his report until his fee and costs were paid and by ordering that the defendants should not be required to bear any part of such fee and costs.

No further action was taken until January 18, 1985, when one of the defendants brought the parties before the court on a notice to dismiss the suit for failure to prosecute. The court dismissed the suit on that date over the complainants' objection that the dismissal was "a denial of judicial decision for financial inability of plaintiffs to defray exorbitant costs for litigation of issue among defendants."

The commissioner's report, filed on January 23, 1985, indicated that, because the assessor's strip file was not admissible in evidence, the commissioner could not answer the fourth and fifth inquiries of the order of reference. These inquiries involved a determination of the value of the property and whether it was necessary to sell the property to satisfy the claims of the complainants. Therefore, the commissioner deemed it unnecessary to decide the first three inquiries, *viz*, who owned the property, whether all owners were before the court, and whether the complainants' claims to title were barred by laches, estoppel, or adverse possession.

On February 5, 1985, the trial court amended its order of January 18, 1985 to show that the suit was dismissed with prejudice. The matter is before us on the complainants' appeal of the entry of the last two orders.

We have limited the appeal to the following issues:

1. Whether the trial court erred in (i) directing that the defendants should not bear any portion of the fee and costs of the commissioner in chancery and (ii) dismissing the cause for failure of the complainants to prosecute.

2. Whether the assessor's strip file reflecting the assessed value of the property to be partitioned was admissible as evidence of the value of the property.

■ Woodlawn injects two contentions on appeal which, if valid, would preclude our review of the first issue in this suit. The first contention is that complainants cannot appeal at this time because they failed to appeal the interlocutory order assessing the commissioner's fee and costs against them within three months of its entry. Woodlawn bases its argument upon Code § 8.01-671(B), enacted in 1977, which requires a petition for an appeal from an interlocutory decree to be presented within three months of its entry. Woodlawn argues that this Code section *requires* the aggrieved party to appeal an adverse ruling in an interlocutory decree within the three-month period or lose his right to complain of that ruling on his appeal from a final decree. The difficulty with the argument is that the language of the preceding section, Code § 8.01-670, authorizing appeals from certain interlocutory decrees, expressly provides that the aggrieved party *"may* present" a petition for an interlocutory appeal within the required period.

■ This permissive language has been in effect since 1849, and we have consistently held that it merely creates a right to appeal certain interlocutory adjudications; if the right is not exercised, the adverse interlocutory adjudication may be the subject of appeal from the final adjudication. *Hess* v. *Hess*, 108 Va. 483, 486, 62 S.E. 273, 274 (1908); *Jameson* v. *Jameson's Adm'x.*, 86 Va. 51, 54-55, 9 S.E. 480, 481 (1889). Before 1977, an interlocutory adjudication could be appealed at any time before entry of a final decree, creating obvious uncertainties for the court and opposing counsel in scheduling further proceedings after an interlocutory adjudication. We think the legislature intended only to eliminate that uncertainty by its enactment of Code § 8.01-671(B). We do not find a legislative intent to *require* the losing party to note an interlocutory appeal or otherwise forfeit his right to later appeal the issue after a final adjudication. Accordingly, we find no merit in this contention.

■ The second contention is that complainants lost their right to complain of the finding in the interlocutory order that the defendants should pay no part of the commissioner's fee because the complainants did not object to the entry of that order. Counsel for the complainants did object to the final order, expressly noting as grounds for the objection the assessment of the commissioner's fee

against the complainants. We hold that the objection satisfies the requirement of Rule 5:25 and deny this contention.

At the initial hearing before the commissioner in chancery, the complainants introduced evidence which, if believed, established their interest in the land. Because the complainants could not prove the value of the land and rested their case, the commissioner returned a report indicating that the case should be dismissed. The trial court impliedly approved this holding by requiring the complainants to pay *all* of the commissioner's fee and costs. We find the trial court erred for the reasons which follow.

■ The first three inquiries of the order of reference dealt with the question whether complainants had an ownership interest in the real estate they could assert in this suit. When they introduced evidence of their relation to Davenport, the intestate, they established a *prima facie* case of ownership, entitling them to partition the property, regardless of its value. Although the defendants introduced no contradictory evidence to rebut the *prima facie* case of ownership, they pled a loss of ownership by the complainants because of laches, adverse possession, and estoppel. These defenses were the subject of the fourth inquiry submitted to the commissioner. The defendants had the burden of proving all three of these affirmative defenses. *See Masterson* v. *Board of Zoning Appeals of Virginia Beach*, 233 Va. 37, 48, 353 S.E.2d 727, 735 (1987) (laches); *Harris* v. *Criterion Insurance Co.*, 222 Va. 496, 502, 281 S.E.2d 878, 881 (1981) (estoppel); *Matthews* v. *W. T. Freeman Co.*, 191 Va. 385, 395, 60 S.E.2d 909, 914 (1950) (adverse possession). Instead of requiring that burden to be met, the commissioner reported that the complainants had failed to prove the value of the property and that, therefore, he did not need to determine the remaining issues. This ruling reversed the proper order of proof of the issues submitted to the commissioner in this case.

■ The value of real property being partitioned becomes material only *after* proof that "partition [in kind] cannot be conveniently made." Code § 8.01-83. The co-owners urging a partition by sale or an allotment must first prove that partition in kind could *not* be conveniently made. *Sensabaugh* v. *Sensabaugh*, 232 Va. 250, 258, 349 S.E.2d 141, 145 (1986); *Quillen* v. *Tull*, 226 Va. 498, 504, 312 S.E.2d 278, 281-82 (1984). Without such proof, a court of equity has no authority to order any such sale. *Cauthorn* v. *Cauthorn*, 196 Va. 614, 619, 85 S.E.2d 256, 259

(1955). *See Shannon* v. *Hall*, 235 Va. 360, 364, 368 S.E.2d 695, 698 (1988) (this day decided); *Leake* v. *Casati*, 234 Va. 646, 649-50, 363 S.E.2d 924, 926-28 (1988).

▮ The trial court did not ask the commissioner to determine whether allotment to some of the co-owners or partition by sale was necessary to divide the property among the co-owners. Moreover, none of the parties introduced evidence on this subject at the commissioner's hearing. Because there was no issue or proof before the commissioner as to whether partition in kind was not convenient, the commissioner and the trial court erred in requiring proof of value at that time.

▮ In equity, the trial court has discretion in the award of costs, Code § 14.1-177; *Commonwealth* v. *County Utilities Corp.*, 223 Va. 534, 547, 290 S.E.2d 867, 874 (1982); nevertheless, we have found an abuse of that discretion if costs are not awarded in favor of the "party or parties substantially prevailing." *Safway Steel Scaffolds of Virginia, Inc.* v. *Coulter*, 198 Va. 469, 478-79, 94 S.E.2d 541, 548 (1956). Because the complainants' *prima facie* showing of an interest in the land was unrefuted, and because the commissioner erred in requiring the complainants to prove the value of the property, the complainants "substantially prevailed" before the commissioner. Reference to a commissioner was had at the request of the defendants to give them an opportunity to prove affirmative defenses, which they failed to do. Therefore, the trial court abused its discretion in requiring them to pay *all* the commissioner's fee and costs and in dismissing the suit when they did not do so. We express no opinion as to whether the complainants should have paid a part of those charges.

▮ Although we have found that the commissioner and the trial court erred in requiring proof of the value of the land before deciding the remaining issues, we decide the issue of the admissibility of the tax assessor's strip file for guidance in the future proceedings in this suit. Complainants argue that the tax assessor's strip file showing the value of the property is admissible in evidence under the official documents exception to the hearsay rule. *See* Code § 8.01-390. This exception, however, does not extend to statements not within the personal knowledge and observation of the recording official. *See Williams* v. *Commonwealth*, 213 Va. 45, 46-47, 189 S.E.2d 378, 379-80 (1972) (age of defendant on transcript of his criminal record furnished by Central Criminal Records Exchange was not admissible because not within personal

knowledge of recording official). Nor does the exception permit the introduction of opinion evidence contained in any such records. *See Ward* v. *Commonwealth*, 216 Va. 177, 178, 217 S.E.2d 810, 811 (1975) (medical examiner's opinion of cause of, death of victim of homicide recorded in death certificate held inadmissible). Complainants did not establish that the commissioner of revenue had personal knowledge of the value of the property; in any event, that knowledge would only have been his opinion. We hold, therefore, that the commissioner and trial court correctly excluded the evidence of the tax assessor's strip file.

Because the trial court erred in imposing all the costs of the commissioner's report on the complainants and in dismissing this suit, we will reverse the final decree and remand the case to the trial court for further proceedings consistent with this opinion.

*Reversed and remanded.*