**Alexandria**

HERMAN EDWARD TICKEL, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0834-88-4

Decided January 15, 1991

COUNSEL

Peter D. Greenspun (Sarah Deneke; Klein & Greenspun, on brief), for appellant.

M. Katharine Spong, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**DUFF, J.**—Herman Edward Tickel, Jr., was convicted, in separate trials, of two counts of receiving stolen property in violation of Code § 18.2-108. In accordance with the jury's recommendation, Tickel was sentenced to two years imprisonment on the first count and five years on the second.[1] On appeal, he contends (1) he was denied due process when the Commonwealth disposed of evidence prior to indictment; (2) the trial court erred in admitting altered documentary evidence; and (3) the trial court erroneously admitted records from the Virginia and Maryland Departments of Motor Vehicles. For the following reasons, we reverse.

## I.

An investigation conducted by the Loudoun County Sheriff's Department led to the seizure of two Porsche automobiles from the defendant's place of residence on June 10, 1987. The Com-

---

[1] The appellant was originally indicted on eight separate counts of receiving stolen property. Five of these counts (counts 1,2,3,7 and 8) were *nolle prosequi*. Of the remaining three counts, the appellant was convicted on two (counts 4 and 6). For reasons of simplicity and clarity we will refer to these convictions as cases one (count six, tried first) and two (count four, tried last).

monwealth proceeded to inspect and photograph the vehicles, paying particular attention to the Vehicle Identification Numbers (VIN) on the cars. On July 29, 1987, after the Commonwealth completed its inspection, the two vehicles were delivered to the insurance companies claiming ownership. The evidence obtained from the investigation and inspection of the vehicles was presented to a grand jury, which returned indictments on August 10, 1987.

The defendant filed a motion for discovery on November 20, 1987, in which he specifically requested permission to inspect all tangible evidence in the possession and control of the Commonwealth. A pretrial hearing was conducted on January 27, 1988, at which time the defendant requested that the court compel the Commonwealth to produce the vehicles for inspection. The court denied the defendant's motion as the Commonwealth had disposed of the property in July, 1987, and no longer had possession.

At the first trial, on February 2, 1988, the Commonwealth presented evidence showing that the defendant had essentially combined, or merged, two vehicles, one legally obtained and one illegally obtained, into one. Along with the evidence of the conflicting VINs, the Commonwealth produced documentary evidence, obtained from the Virginia Department of Motor Vehicles, showing that a 1981 Porsche had been stolen from an Arlington car dealership in 1981. The Commonwealth also showed that a wrecked 1983 Porsche had been sold as a salvaged car. The VINs from both of these vehicles were present on one of the vehicles in the defendant's possession. Inspection of that vehicle revealed that the concealed VIN was that of the stolen car, and that the public VIN was that of the wrecked car. The Commonwealth alleged that these two cars were merged into one with the legitimate VIN of the wrecked car being used as a "cover" for the stolen car. On this evidence the jury found the defendant guilty as charged.

At the second trial, on March 15, 1988, documentary evidence was again used to create a paper trail showing the theft of one vehicle, the purchase of a salvage car, and the merger of the two. As part of its documentary evidence in this trial, the Commonwealth introduced a pick-up ticket and a sales receipt for a vehicle previously owned by Auto Disposal of Brandywine (ADB), a company that deals in buying and selling used and salvaged vehicles. The ticket and receipt purported to identify the "cover" or salvage vehicle.

William Edelen, the manager of ADB, testified that he provided the pick-up ticket and sales receipt to Deputy Jeff Brown of the Loudoun County Sheriff's Department shortly after Tickel's arrest. He further testified that he initialed each document as it was surrendered. Testimony at trial indicated that the sales receipt contained a "write over"of one of the digits of the VIN number at the time it was delivered to Deputy Brown. Thereafter, the same "write over" was made on the VIN number which appeared on the pick-up ticket. Both the pick-up ticket and the sales receipt had been furnished to the defendant during discovery; however, the "write over" on the pick-up ticket did not appear on the copy furnished to the defendant. The VIN on the document was changed from 9113103362 to 9113102362 to comport with the physical evidence. The Commonwealth did not contest the fact that the pick-up ticket alteration occurred while the document was in the possession and control of either the Sheriff's Department or the Commonwealth attorney's office. The jury found the defendant guilty as charged and fixed his sentence at five years imprisonment.

## II.

The appellant first contends that the Commonwealth violated his due process rights by turning the two vehicles over to the insurance companies prior to the issuance of the indictments. We disagree.

The United States Supreme Court recently has considered the effect of a state's failure to preserve evidence. In *Arizona v. Youngblood*, 488 U.S. 51 (1988), the Court determined that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58. Determining the intentions of the police in failing to preserve evidence requires consideration of the nature of the evidence. If it is clear that, had the evidence been properly preserved, it would have formed a basis for exonerating the defendant, then absent a showing to the contrary we must assume that the police were not acting in good faith. However, in *Youngblood*, the Supreme Court held that the "Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."

*Id.* at 57-58 (emphasis added).

In the instant case, the defendant made no showing that the vehicles, had they been available to him, would have yielded any exculpatory evidence. It is unlikely, because of the nature of the evidence presented, that further inspection of the cars would have led to any useful information. Given this, there clearly is no indication of bad faith on the part of the Commonwealth. Accordingly, we find no reversible error in the actions of the Commonwealth in disposing of the automobiles.

## III.

The defendant next argues that the use of the altered pickup ticket by the Commonwealth in the second case constituted misconduct of such a nature as to justify reversal of his conviction. The proper inquiry on appeal is whether or not the prosecutor's conduct violated the defendant's due process rights. However, we do not reach this issue because the defendant has not properly preserved it by objecting to the admission of this document, nor did he move for a mistrial or request cautionary instructions. The defendant discovered the discrepancy and alteration and elected to present evidence to the jury on both matters. He made a decision at that juncture to proceed with trial with that evidence before the jury rather than to attempt to exclude the evidence, or to seek a mistrial, or to pursue other possible remedies. Therefore, we are precluded from reviewing the allegations of prosecutorial misconduct. Rule 5A:18. *See O'Dell v. Commonwealth,* 234 Va. 672, 678, 364 S.E.2d 491, 494, *cert. denied,* 488 U.S. 871 (1988); *Blount v. Commonwealth,* 213 Va. 807, 811, 195 S.E.2d 693, 696 (1973). Under these circumstances where the defendant makes a calculated decision to proceed to verdict, the ends of justice are not served by our disregarding the procedural bar by considering an issue to which the defendant failed to object and provide the trial judge an opportunity to rectify. *See Mounce v. Commonwealth,* 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987).

While referring to a different factual pattern, the court in *Wilson v. Commonwealth,* 157 Va. 962, 970, 162 S.E. 15, 17 (1932), observed:

When of opinion that the wilful misconduct of the representative of the commonwealth has prejudiced the jury against

him, his remedy is to immediately move the court to discharge the jury and grant him a new trial. Otherwise, it "would put it in the power of a defendant to compel a second trial, at his election, whenever a prosecutor at any stage, by inadvertence or otherwise, violated the spirit of the statute under consideration; and this, too, notwithstanding the trial court may have done its utmost to rectify the mistake, and may have made no ruling or decision in that connection adverse to the defendant or to which he took any exception. . . . Misconduct on the part of the prosecutor is not different from misconduct of a juror or other person connected with trial. It is a settled rule that a person having knowledge of the misconduct or incompetency of a juror, or other matter not affecting the jurisdiction, which would vitiate the trial, who proceeds to a conclusion without objection, will not afterwards be heard to object that the trial was vitiated thereby.

## IV.

During both trials, the Commonwealth used documentary evidence obtained from the Division of Motor Vehicles to show odometer readings, ownership, signature, transfer dates and sales prices of the vehicles. With this information the Commonwealth was able to show the chain of custody/ownership of the cars prior to the time of the defendant's possession. The defendant contends that all of the information gained from the records of the Virginia and Maryland Departments of Motor Vehicles was inadmissible hearsay, outside the business records or official documents exceptions to the rule against hearsay. We agree.

■ "Hearsay evidence is defined as a spoken or written out-of-court declaration or nonverbal assertion offered in court for the truth of the matter asserted therein." *Arnold v. Commonwealth*, 4 Va. App. 275, 279-80, 356 S.E.2d 847, 850 (1987). Such out-of-court statements or assertions traditionally have been excluded because they have been perceived to lack the conventional indicia of reliability and are not susceptible to cross-examination. *See Evans-Smith v. Commonwealth*, 5 Va. App. 188, 197, 361 S.E.2d 436, 441 (1987). In this case, the Division of Motor Vehicles' information qualifies as hearsay because it was offered to show information supposedly known to a person (the record keeper) not present in court.

Numerous exceptions to the rule against hearsay evidence have evolved over the years, two of which are of interest here: the "business records" exception and the "official documents" exception. Though distinctly separate exceptions, the two historically have been confused and often intermingled.

The business records exception allows the introduction into evidence of the regular business entries of persons, other than the parties, where the entrant is not available at trial. *See French v. Virginia Ry.*, 121 Va. 383, 93 S.E. 585 (1917). By modern standards this "unavailability" for trial includes actual inability to attend the trial for reasons such as illness, as well as "commercial unavailability." Unavailability for "commercial" reasons occurs when the production of the record keeper in the courtroom would require effort and inconvenience to such a degree that it would outweigh the value of the testimony at issue.

The application of the business records exception has been somewhat relaxed in recent years. Originally, as noted above, the documents presented as business documents could be admitted without requiring proof from the original observers or record keepers. *Neeley v. Johnson*, 215 Va. 565, 571, 211 S.E.2d 100, 106 (1975); *duPont de Nemours & Co. v. Universal Moulded Prods. Corp.*, 191 Va. 525, 567-68, 62 S.E.2d 233, 252 (1950). This exception was limited, however, to information within the personal knowledge of the record keeper, i.e., information that he could testify to if called as a witness. *Boone v. Commonwealth*, 213 Va. 695, 697, 194 S.E.2d 689, 690 (1973). This principle has been expanded, and courts no longer necessarily exclude all entries made by persons not having personal knowledge of the facts entered. In many cases practical necessity requires the admission of written factual evidence based on considerations other than the personal knowledge of the recorder, provided there is a circumstantial guarantee of trustworthiness. *French*, 121 Va. at 387-88, 93 S.E. at 586. This circumstantial guarantee of trustworthiness is shown in the regularity of preparation of the records and the fact that they are relied upon in the transaction of business by the person or entities for which they are kept. *Id.*

The second exception is for official documents. It parallels the business records exception in that it provides for the admission of certain official public documents without the necessity of producing the actual record keeper.

In *Williams v. Commonwealth*, 213 Va. 45, 189 S.E.2d 378 (1972), a defendant was convicted of selling drugs to a minor. The only evidence of the minor's age was his arrest record. The information contained therein was told to the officer by the minor. The court stated that "[i]t is a generally recognized rule that records and reports prepared by public officials pursuant to a duty imposed by statute, or required by the nature of their offices, are admissible as proof of the facts stated therein." *Id.* at 46, 189 S.E.2d at 379. The court went on to state, however, that "the mere fact that a record or report qualifies as a public document does not automatically overcome the hearsay objection unless the document relates facts or events within the personal knowledge and observation of the recording official to which he could testify should he be called as a witness." *Id.*; *see also Bailey, Adm'x v. Hunter, Inc.*, 207 Va. 123, 125-26, 148 S.E.2d 826, 828 (1966); *Olender v. United States*, 210 F.2d 795, 801 (9th Cir. 1954).

The Commonwealth directs our attention to *Automatic Sprinkler Corp. v. Coley & Petersen, Inc.*, 219 Va. 781, 250 S.E.2d 765 (1979), a construction contract case. In *Automatic Sprinkler Corp.*, the plaintiff attempted to introduce corporate records to prove the value of materials used and labor performed during repair of damaged work. In creating an exception to the business records rule and allowing the introduction of these records, the Court stated that "practical necessity requires the admission of written factual evidence based on considerations other than the personal knowledge of the recorder, provided there is a circumstantial guarantee of trustworthiness." 219 Va. at 792, 250 S.E.2d at 773. The court pointed to the regularity of the preparation of the business records as the circumstantial guarantee of trustworthiness.

The Commonwealth contends that the exception created in *Automatic Sprinkler Corp.* shows a relaxed attitude on the part of the Supreme Court toward the necessity of personal knowledge on the part of the record keeper in either the business records exception or the official documents exception. Indeed, the similar language employed in both decisions arguably supports this result. We believe, however, that public officials acting in their official capacity, and documents purporting to convey information known to those officials, should be held to a higher standard of personal knowledge than the business records exception requires.

■ This Court has recently maintained the distinction between the business records and the official documents exceptions in the case of *Ingram v. Commonwealth*, 1 Va. App. 335, 338 S.E.2d 657 (1986). In *Ingram*, the defendant was appealing the use of DMV records to show his prior driving record and the fact that his license was suspended. Referring to *Williams*, we stated that a hearsay objection is overcome under the official documents exception only if the document "relates facts or events within the personal knowledge and observation of the recording official to which he could testify should he be called as a witness." *Ingram*, 1 Va. App. at 339, 338 S.E.2d at 659 (quoting *Williams*, 213 Va. at 46, 189 S.E.2d at 379).

Moreover, the Supreme Court recently has reaffirmed this distinction in the case of *Smith v. Woodlawn Construction Co.*, 235 Va. 424, 368 S.E.2d 699 (1988). *Smith* involved a suit between heirs of an estate over the division of certain real estate. Offered into evidence as proof of the value of the land was the county tax assessor's "strip file," or assessment of value. The Court refused to allow this evidence, stating that the official documents exception "does not extend to statements not within the personal knowledge and observation of the recording official." *Id.* at 431, 368 S.E.2d at 704; *see Williams v. Commonwealth*, 213 Va. 45, 46-47, 189 S.E.2d 378, 379-80 (1972).

The Commonwealth places great reliance on the case of *Frye v. Commonwealth*, 231 Va. 370, 345 S.E.2d 267 (1986). We find this reliance to be misplaced. In *Frye*, the defendant had escaped from prison in West Virginia. Several months later the car he was driving was stopped by a Virginia state police officer, who was shot and killed by Frye. The Court held that a Division of Motor Vehicles' printout and a computer report from the NCIC information bank were properly admitted as an exception to the hearsay rule. In rendering its decision the Court inadvertently referred to the business records exception when discussing the DMV printouts. The Court, however, applied the official documents rule in making its determination, limiting "admission of such evidence to facts or events within the personal knowledge and observation of the recording official." *Frye*, 231 Va. at 387, 345 S.E.2d at 279. The Court held that the DMV records in that case fell within the scope of the exception because they dealt with information that would, in fact, have been known to the person making the entry.

■ We hold that the official documents exception to the hearsay rule is narrow in scope, encompassing only that information within the knowledge of the record keeper. The information sought to be introduced in the instant case, contrary to the information admitted in *Frye*, was not such that would be known to the official record keeper. The odometer reading, transfer date, and sales price were facts that the record keeper had obtained from a third person. As such, this case is analagous to *Williams*, where the arrest record of the minor was not a record of the police officer's actual knowledge.

For the foregoing reasons, we hold that the Division of Motor Vehicles' records admitted at both trials should have been excluded as hearsay not falling within any exception. The convictions resulting from the first trial of February 2, 1988 are reversed and remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Coleman, J., and Keenan, J., concurred.