## Givens v. Pierson's Administratrix.

(Decided January 6, 1916.)

### Appeal from Daviess Circuit Court.

1. Evidence—Entries in Books—Competency of as Substantive Evidence.—Entries on tickets or stubs or slips of paper made out by clerks in stores in the regular course of business and at the time the transaction happened, are not original entries in the meaning of the rule that book entries are admissible as substantive evidence. But these tickets or stubs or slips are admissible as evidence for the purpose of refreshing the memory of the party who made them.

2. Evidence—Entries in Books—Competency of as Substantive Evidence.—But where the entry is made in the usual course of business on a permanent book, whether it be a bill book, cash book, day book or ledger, from memoranda or tickets made out in the usual way by clerks or cashiers, these book entries are admis-

sible as substantive evidence of the transaction, whether the persons who made the entries be living or dead at the time of the trial, and without reference to whether the original tickets or stubs or slips are available or the clerk who made the memoranda on them can be produced.

3. Evidence—Entries in Books—Competency of as Substantive Evidence.—If the person who made the first book entries be dead, the entries are admissible if proven to be in his handwriting and in the regular course of business. If he is living and his evidence as a witness can be secured, it will be competent to show by him the fact that he made the entries and the circumstances under which they were made.

4. Evidence—Entries in Books—Competency of as Substantive Evidence.—Where the bill books, in which the entries were first made from tickets made out by the clerk when the transaction occurred, together with the tickets have been destroyed by fire, but the entries on the bill books were transferred by the person who made them to a ledger, the ledger entries were admissible as substantive evidence, having the same weight as would the bill books if they could have been introduced.

MILLER, SANDIDGE & MALIN for appellant.

J. J. SWEENEY and C. W. WELLS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The principal question in this case grows out of the alleged insufficiency of the petition and evidence to support a claim for $258.46 asserted by the administratrix of W. W. Pierson against the appellant, T. K. Givens.

W. W. Pierson died in February, 1912, and thereafter his administratrix brought suit to recover a balance of $224.27 alleged to be due her intestate on an open account. The first item on the ledger account introduced as evidence reads, "March 1, 1909; balance transferred, $258.46," and this item is followed by other items of indebtedness running from March 4, 1909 to March, 1911, during which time the account was credited by various items, leaving due, according to the face of the account, the balance stated.

The petition as amended charged "that prior to the first day of March, 1909, at the special instance and request of the defendant, Thomas K. Givens, the said W. W. Pierson, Jr., sold and delivered to said defendant, various and sundry items and articles of merchandise, and said decedent in the usual course of business charged said items against the defendant on the books kept by

said decedent for the purpose at the usual, reasonable and customary prices for such articles, and the defendant promised and agreed to pay same; that also, before the first day of March, 1909, at the special instance and request of the defendant, the plaintiff's said decedent advanced and loaned to the defendant various and sundry sums of money and paid to others for him various and sundry other sums of money, and the said sums of money so paid to and for said defendant were also charged against him on the books of account of said decedent and said defendant agreed to repay said sums to the plaintiff; that on the............day of............................................................, 191........, all the books of accounts used and kept by said decedent before said March 1, 1909, and all accounts and memoranda of accounts of said decedent with said defendant, and all entries and charges against him or credits in his favor prior to said March 1, 1909, were, without the fault of said decedent, destroyed by fire, and for that reason the plaintiff cannot furnish an itemized statement of the merchandise sold and delivered or the money paid to or for said defendant by said decedent prior to said first day of March, 1909, but plaintiff says that said account for merchandise and money in favor of said decedent and against said defendant amounted on the first day of March, 1909, to a large sum, but the defendant had paid and satisfied a part thereof and there was on said date a balance due and owing by the defendant to said decedent of $258.46 on account of said merchandise sold and delivered as aforesaid, and said money paid to and for the defendant as aforesaid; that said balance of $258.46, as of date March 1, 1909, is the first item on the account filed with the plaintiff's petition, and for the reasons above set out, same cannot be further itemized.''

In his answer the defendant, Givens, admitted that prior to March 1, 1909, he had purchased from Pierson sundry articles of merchandise and had received divers sums of money, but denied any knowledge or information sufficient to form a belief as to whether the decedent, in the usual course of business or at all, charged said items or any of them against him on books kept by decedent for the purpose. He denied any knowledge or information as to whether any of the accounts kept by decedent prior to March 1, 1909, had been destroyed by fire, and denied that on that date there was a balance due him by the decedent of $258.46, or any other sum, and averred

that he had paid to the decedent all that was due him for merchandise or money furnished or advanced prior to March 1, 1909.

It is argued by counsel for appellant that the petition as amended did not state a cause of action, but this contention is not well founded. The petition contained all the necessary averments to constitute a good cause of action in view of the averment that the books, accounts and memoranda showing the items that went to make up the amount alleged to be due on March 1, 1909, had been, without the fault of the decedent, destroyed by fire.

On the trial of the case Givens was not offered as a witness, and the only witness introduced by the administratrix was Walter E. Mark, who was the office manager and bookkeeper for Pierson from 1895 until shortly before the death of Pierson in 1912. In reference to the matter of this $258.46, his testimony, in substance, was that Pierson conducted a large mercantile establishment employing a number of clerks, among them being Givens, who also was assistant manager. He said he was bookkeeper during the whole time that Givens' account was being made, and that when Givens purchased goods on credit in the store, an entry would be made of the purchase on a ticket such as was in general use in the store by the clerk making the sale, and that the ticket would be given to him the next day when an entry showing the transaction as it appeared on the ticket would be made by him on a bill book. That when Givens drew money from the store, as he often did, in payment or part payment of his salary, a ticket showing the amount that he received would be made out by the cashier, and on the next day he would enter the transaction shown by the ticket on a cash book, and soon afterwards, in due course of business, the entries on the bill book and the cash book would be transferred by him to the account of Givens kept in the ledger, also made up by him. That this was the method pursued with all customers of the store during the time he was bookkeeper, and at the end of each month he would present Givens a statement of his account taken from the ledger, showing the items purchased and the amounts charged therefor, as well as the amount of cash received.

He further testified that the account of Givens on the ledger introduced on the trial was transferred to that ledger by him from another ledger also kept by him that

had been filled up. It also appeared from his testimony that the tickets made out by the clerks and cashier as well as the bill books and cash books, and all the ledgers except the one introduced on the trial, had been destroyed in a fire. The witness said he did not have any personal knowledge of the merchandise account or cash account of Givens except as it appeared on the tickets given to him and from which he made the original entries in the bill book and the cash book, which were afterwards transferred by him to the ledger. Whether the entries on these tickets were correct or not, he did not know. But he did know the method of business and that the entries of the transactions had with Givens were kept on the tickets and in the books in the usual and customary manner, and that the bill books and cash books showed correctly the state of his account as exhibited on the tickets made out when the merchandise was purchased or the cash advanced, and also knew that the ledger accounts were correctly kept, and the entries therein correctly transcribed by him from the bill books and cash books and correctly carried over by him from one ledger to another.

It will thus be seen that the ledger produced in court, and which showed in the first entry on the account of Givens that there had been transferred from another ledger a balance due by him of $258.46, was not a book of original entry. The first original entry, strictly speaking, was the entry made by the cashier who advanced the money or the clerk who sold the goods, and the next entry was the entry made by this bookkeeper on the day book and the cash book; and the next entries were those made by this bookkeeper in transferring the items from the bill book and the cash book to the ledger. So that the witness was only able to state from personal knowledge that the entries made on the bill book and cash book were correct copies of the entries made on the tickets, and that the entries on the bill book and cash book were correctly transferred to the ledger, and when the first ledger on which the account appeared was filled, it was correctly transferred from that ledger to the one introduced on the trial.

The question, therefore, is, should the book that was produced be treated, under the circumstances, as a book of original entry and entitled to the same weight as the bill book or cash book in which the entry was first made

or the ledger to which the account was first transferred from the bill book and cash book? It is manifest that unless the entries on this ledger should be so treated, the administratrix totally failed to make out her case, because if the entry on the ledger introduced, showing the state of Givens' account on March 1, 1909, taken in connection with the testimony of the bookkeeper, should not be treated as substantive evidence of the existence of this indebtedness of Givens, there was no evidence offered tending in any manner to establish his indebtedness in the sum of $258.46.

There appears to be some conflict in the authorities on the question of the admissibility of book entries such as were relied on in the trial of this case to establish the indebtedness of Givens. Indeed, an investigation of the cases will disclose that some courts have made what seem to be refined and apparently unsubstantial distinctions in determining what are and what are not original entries in the sense that they may be received as substantive evidence.

The general rule, however, on the subject of the admissibility of book entries as substantive evidence of the fact that the transaction disclosed by the entry actually took place is usually stated by the authorities in substantially the same form. But in the practical application of the rule to the different facts and circumstances arising in the trial of cases, it has been found · necessary, in order that the rule should be of any value, to introduce many exceptions.

In Greenleaf on Evidence, 15th Ed., Vol. 1, section 115, the general principles on which the admissibility of evidence of this character is allowable is thus stated:

"The entry, to be admissible, must be one which it was the person's duty to make, or which belonged to the transaction as part thereof, or which was its usual and proper concomitant. It must speak only to that which it was his duty or business to do, and not to extraneous and foreign circumstances. The party making it must also have had competent knowledge of the fact, or it must have been part of his duty to have known it; there must have been no particular motive to enter that transaction falsely, more than any other; and the entry must have been made at or about the time of the transaction recorded. In such cases, the entry itself is admitted as original evidence, being part of the *res gestae*. The gen-

eral interest of the party, to show that he has done his official duty, has nothing to do with the question of its admissibility; nor is it material whether he was or was not competent to testify personally in the case. If he is living, and competent to testify, it is deemed necessary to produce him. But, if he is called as a witness to the fact, the entry of it is not thereby excluded. It is still an independent and original circumstance, to be weighed with others, whether it goes to corroborate or to impeach the testimony of the witness who made it. If the party who made the entry is dead, or, being called, has no recollection of the transaction, but testifies to his uniform practice to make all his entries truly, and at the time of each transaction; and has no doubt of the accuracy of the one in question, the entry, unimpeached, is considered sufficient, as original evidence, and not hearsay, to establish the fact in question.''

And also in section 117: ''The admission of the party's own shop-books, in proof of the delivery of goods therein charged, the entries having been made by his clerk, stands upon the same principle which we are now considering. The books must have been kept for the purpose; and the entries must have been made contemporaneously with the delivery of the goods, and by the person whose duty it was, for the time being, to make them. In such cases the books are held admissible as evidence of the delivery of the goods therein charged, where the nature of the subject is such as not to render better evidence attainable.''

In Poor v. Robinson, 13 Bush, 290, this court said, in speaking of the competency and weight of book entries: ''Such entries must be proved by the persons making them, unless they have died or absconded, and then the entries themselves must be proved when the books cannot be produced to the court, and it is not sufficient to prove, as was done in this case, the mere conclusions of the witnesses to their substance and effect. The contents of the books of third persons, and especially of bank books, which have been regularly kept, are, when properly proved, admitted as evidence as a matter of necessity. They have an established character as evidence, and may be used in case of the death or absconding of the person by whom they were kept.''

But it is at once apparent that these general statements of the rules of evidence applicable to book entries

are not very pertinent as authority for the admissibility of the book evidence here in question. And so it will be necessary to apply to this case some of the exceptions that have grown up in the law, for the purpose of making this species of evidence useful when sought to be applied to modern business methods.

But we may say at the outset that the authorities are very generally agreed that the entries on tickets or stubs or slips of paper made out by clerks in stores in the regular course of business and at the time the transaction actually happens, are not the original entries in the meaning of the rule. The original entry is the entry first made in the regular course of business in a permanent book, as, for example, in this case in the bill book or cash book. Entries first made on tickets or stubs or slips of paper by clerks or others are treated as mere memoranda, admissible as evidence for the purpose of refreshing the memory of the party who made them, if he is introduced as a witness; but not as independent or substantive evidence of the fact that the transaction took place: Chamberlayne on Evidence, vol. 4, sections 3085-3089; Elliott on Evidence, vol. 2, section 460.

There is also some authority to the effect that if entries are made on books such as bill books or cash books, or even ledgers from tickets or stubs or slips of paper made out by clerks or cashiers at the time the transaction occurred, they are not admissible as substantive, independent evidence of the transaction unless the person making the entry on the bill book or cash book or ledger has some personal knowledge of the transaction, or the clerk or cashier who made out the original ticket or slip can testify as to the correctness of the entry. See cases cited in note to Smith v. Smith, 52 L. R. A., 545.

But there is much authority for the rule, which we think the better one, that where the entry is made in the usual and regular course of business on a permanent book, whether it be a day book or bill book or cash book or ledger, from memoranda or tickets or stubs or slips made out in the usual way by clerks when the transaction occurred, these book entries are admissible as original and substantive evidence of the transaction whether the person who made the entries be living or dead at the time of the trial, and without reference to whether the original tickets or stubs or slips are available or the clerk

who made the memoranda on them can be produced. If the person who made the first book entries be dead, the entries are admissible, if proven to be in his handwriting and in the regular course of business. If he is living and his evidence as a witness can be secured, it will of course be competent to show by him the fact that he made the entries and the circumstances under which they were made.

In Wigmore on Evidence, vol. 2, section 1530, the reasons for this enlargement of the rule are thus stated, following a discussion of the grounds on which they rest: "The conclusion is, then, that where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry under the present exception, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility of doing so. Why should not this conclusion be accepted by the courts? Such entries are dealt with in that way in the most important undertakings of mercantile and industrial life. They are the ultimate basis of calculation, investment, and general confidence in every business enterprise; nor does the practical impossibility of obtaining constantly and permanently the verification of every employe affect the trust that is given to such books. It would seem that expedients which the entire commercial world recognizes as safe could be sanctioned, and not discredited, by courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly be one rule for the business world and another for the court room. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who as attorneys have already employed and relied upon the same methods. In short, courts must here cease to be pedantic and endeavor to be practical."

In Jones on Evidence, vol. 3, sec. 569, it is said: "The former strict idea of what constituted original entries has been modified to fit the necessities of new business

conditions. Inasmuch as under the modern methods of extensive business houses the information relative to the transactions constituting the accounts must pass through various hands before being permanently recorded, some system of temporary memoranda preparatory to the permanent records is necessary to insure convenience as well as accuracy. It would be impracticable to preserve for any great length of time the tags, slips or tokens constituting such original memoranda, and impossible, in view of the changing of employes, to obtain the testimony of the person who made the temporary memoranda or conducted the transaction. Hence, following the rule of necessity, the courts do not regard such temporary memoranda as the originals, but look to the permanent records as such original entries when properly verified by a suppletory oath. In this particular, every case must be made to depend very much upon its own peculiar circumstances, having regard to the situation of the parties, the kind of business, the mode of conducting it and the time and manner of making entries.''

Other authorities supporting these rules are: West Virginia Architects & Builders v. Stewart, 68 W. Va., 506, 36 L. R. A. (N. S.), 899; Diament v. Colloty, 66 N. J. L., 295.

Indeed, if entries made in the regular course of business on permanent books from data furnished in the form of tickets made out at the time the transaction actually occurred, were not admissible as original entries, the doctrine of the admissibility of this character of evidence would be of little value to modern business establishments. In the early history of mercantile affairs it is likely that entries showing sales of merchandise or other articles, or the advancement of money, if that was a part of the business, were made in some permanent book at the time the transaction occurred by the person who attended to it; and even now in many small business establishments this method is pursued and books so kept are of course, accurately speaking, books of original entry.

But this method of making entries in permanent books at the time the transaction actually happens is impossible in the conduct of large establishments where the usual and customary manner is for the clerk or other person who attends to the transaction with the customer to make an entry of it on a ticket and on the next day,

or perhaps the same day, the entries made on these tickets are transferred by the bookkeeper to some permanent book. But it would be a rare instance in which the bookkeeper would have any knowledge of the transaction except such as he gained from the ticket handed to him to be entered in his books. And so this change in business methods has made necessary the broadening of the rule admitting book entries as substantive evidence, and now the test of the admissibility of this class of evidence does not depend so much on whether the entry offered in evidence was made on a permanent book at the time the transaction actually occurred by the clerk who attended to it as it does on the fact that it was made in a permanent book as a part of the regular course of business and in the usual manner in which the business is conducted, although the entry may be made by a person who has no personal knowledge of the transaction and whose only information is gained from the tickets furnished him by the clerks or persons who actually attended to the business.

If, therefore, the bill books or cash books, in which the account of Givens was first entered, were available or could have been introduced as evidence, there would be no difficulty in holding that the entries made in these books by the bookkeeper from the memoranda contained on the tickets made out by the clerks and cashiers would be independent substantive evidence of the fact that the transactions appearing on these books actually occurred. These books alone, in the absence of any other evidence, would have made out a *prima facie* case for the plaintiff, although neither the tickets nor the parties who made them could be produced, and although the bookkeeper who made these entries on the books had no knowledge of the transaction except such as he gained from the tickets furnished to him at the time the book entries were made. But as the bill books and cash books were destroyed by fire before the trial, as well as the tickets, the remaining question is, was the ledger entry admissible as independent substantive evidence?

In determining this question it is well to keep in mind as a controlling factor in the admissibility of this evidence that the bookkeeper introduced as a witness testified that he transferred to the ledger from which the balance on the ledger introduced was taken from the bill books and cash books the account of Givens in the regular

course of business, and that the ledger account was a correct copy of the account as it appeared on the cash books and bill books. In view of these facts it seems to us that there is no substantial difference between the weight and sufficiency of the ledger and the weight and sufficiency of the bill books and cash books, if they could have been introduced. Nor is there any reason why the ledger entries should not be competent as substantive evidence if the bill book and cash book entries would be competent evidence. The bookkeeper did not have any personal knowledge of the transactions when he made the entries on the bill books and cash books. He did not know any more or any less about them when he made the entries on the ledger, and we do not perceive any reason why the mere circumstance that the entry was transferred from the day book to the ledger by the person who made the entry in the day book should affect its admissibility as evidence in the ledger, when it would have been admissible if the bill book and cash book could have been introduced. It is probable that the bill books and cash books would have shown the items that went to make up the account of Givens, but if without specifying these items in the bill book or cash book the entrant had merely stated in these books the total shown by the tickets, we do not think it would have affected the competency of the entry as evidence of the amount of indebtedness. If only one entry giving the total of several tickets had been made in the day book or cash book, this entry, if made in the regular course of business, would have been equally as competent as if the books had set out in detail each item constituting the account.

It is also true that this character of evidence may sometimes give to the merchant an advantage and make it difficult for the person charged to disprove the correctness of the entry. But the rule admitting this species of evidence has been so sufficiently tested by the experience of the years it has been in effect and so generally approved as to show that little if any injustice has been perpetrated under it. And if it was not admissible to prove accounts in this way, it would many times happen that the merchant would be unable to enforce the collection of a just claim, if the debtor was disposed to question all book entries that could not be otherwise proven on account of the absence or death of the persons who sold the articles or made the entries and the loss of books.

It will be noticed that the bookkeeper testified that some of the items going to make up this business consisted of cash advanced, but, under the circumstances of this case, we see no sound reason for making any distinction between the items of cash and the items of merchandise. The advancements of cash were made in the regular course of business and in the manner employed for the payment of his salary, and the tickets containing these cash items, and the books themselves on which these items of cash were entered, were as much a part of the regular course of business as were the entries made with respect to the merchandise purchased by him.

Having this view of the matter, the court should have directed a verdict for the administratrix, at the conclusion of the evidence, in place of submitting the matter to a jury.

Givens, in his answer, set up a counter-claim in which he asserted that there was due him several hundred dollars on account of unpaid salary. Complaint is made that the instructions of the court on the subject of this counter-claim did not fairly present the issue to the jury. We think, however, that the jury could not have been misled to the prejudice of Givens by the instructions concerning his salary. The issue presented on this matter was a very simple one, and the evidence concerning it was so brief that the jury could not have failed to distinctly understand the dispute between the parties in respect to the salary; and in their verdict they found that Givens was not entitled to the salary claimed.

The judgment is affirmed.