(82 South. 530)

LOVEMAN, JOSEPH & LOEB v. McQUEEN.
(6 Div. 785.)

(Supreme Court of Alabama. June 26, 1919.)

1. EVIDENCE ☞376(6)—BOOK ENTRIES—AUTHENTICATION.

Prior to the passage of Code 1907, § 4003, original entries in books were not admissible in evidence unless they were sworn to as having been made by the party who made them, and that he knew personally of their correctness at the time they were made, if such party was living, but, if dead, or insane, or beyond the jurisdiction of the court, proof of his handwriting was sufficient.

2. EVIDENCE ☞354(13) — BOOK ENTRIES — KNOWLEDGE OF PERSON MAKING ENTRY.

Code 1907, § 4003, did not change pre-existing requirement of common law that clerk making entries of accounts must have had personal knowledge of the transactions entered by him in order to render his entries admissible as independent evidence without corroborating proof of their correctness.

3. STATUTES ☞226—CONSTRUCTION—ADOPTED STATUTES.

Where the statute of another state is adopted by the Legislature, it will be given a well-settled construction, already given to its terms before its adoption by the court of its nativity; it being presumed that the lawmakers were familiar with that construction and adopted the statute in that sense.

4. EVIDENCE ☞354(13) — BOOK ENTRIES — ADMISSIBILITY — "INACCESSIBLE TO PROCESS."

If the name and identity of a salesman or clerk who sold goods and did the work and reported the sales which are the subject of book entries is unknown to defendant and cannot be ascertained he is "inaccessible to process" within the meaning of Code 1907, § 4003, and, upon such fact being shown to the court, the book entries are admissible as original evidence, although made by persons not having personal knowledge of the sales.

5. EVIDENCE ☞354(5)—LOOSE-LEAF LEDGER.

It is not a valid objection to the admission in evidence of original entries that they were made on loose-leaf ledger sheets not fastened together by permanent binding.

6. WITNESSES ☞318—CORROBORATION OF UNIMPEACHED WITNESS.

Book entries are not admissible in corroboration of the testimony of a witness that he had several times presented statements of account copied from such book entries, where there was no question as to the correctness of the transcription of the account stated to defendant from the book entries; mere corroboration not being permissible in the absence of some form of impeachment.

Mayfield, J., dissents in part.

Appeal from Circuit Court, Jefferson County; John H. Miller, Judge.

Assumpsit by Loveman, Joseph & Loeb against J. W. McQueen. Judgment for defendant, and plaintiff appeals. Affirmed.

The action is on the common count, including one for an account stated, and the complaint is accompanied by a sworn itemized statement of the account running from July 1, 1909, to July 6, 1914. Originating in defendant's purchase of a Sterns car and in a general automobile service, the account shows a balance of $158.81 due on August 1, 1909, and by monthly additions a balance of $2,047.15 on July 6, 1914. The items of the account include gas, oil, graphite, soap, labor for cleaning and overhauling and repairing, and perhaps two score or more of different parts furnished one or more times and chauffeur's salary. These items are about 630 in number, and range from 5 to 50 each month. Plaintiff offered in evidence, in proof of the

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] Ante, p. 277.

account collectively and severally, eight sheets from their loose-leaf ledger purporting to cover the account between the plaintiff and defendant, but beginning with the statement of a balance and items beginning on July 27, 1909. It appeared that the items entered on these sheets were transcribed by the motor company's bookkeepers each day from check slips handed in by the salesmen or workmen showing items of business transaction by the maker personally, but of which the bookkeepers had no knowledge otherwise than from the slips themselves. There were five bookkeepers in the service of the company during the period of the account, two of whom testified to and identified the parts of the account kept by each in the manner stated. Two of them could not be found, and one was shown to be ill at Anniston, Ala., and unable to attend. The handwriting of these absent bookkeepers was duly proved. It appeared that the check slips or charge ticket referred to were all lost or destroyed. It did not appear how many salesmen or mechanics had been in the company's employment during the period of the account, who they were, or whether they were living or dead or within or without the jurisdiction of the court. No testimony was offered on that subject. It appeared that several statements on the account made up from these ledger sheets were submitted to the defendant from time to time, and according to some of the testimony he did not dispute the account except as to a few specified items. The defendant objected to the admission of the several ledger sheets because: (1) They are not shown to be true and accurate; (2) because it is not shown that the persons making the ledger entry had any personal knowledge of the transaction so transcribed; (3) because they are hearsay; (4) because they are not the original entry; and (5) because they were transcribed from charge slips. The objection being sustained and the ledger sheets being excluded, plaintiff took nonsuit for bill of exception.

Forney Johnston and W. R. C. Cocke, both of Birmingham, for appellant.

Tillman, Bradley & Morrow, of Birmingham, for appellee.

SOMERVILLE, J. [1] Prior to our present statute (Code 1907, § 4003) it was the settled rule in this state that—

"Original entries made by a person in his own books, or made by his clerk, when done in the ordinary course of business, and contemporaneously with the transaction to which such entries relate, are generally admissible in evidence to prove the correctness of all items within the knowledge of the person making them. Before [they are] admissible, the entries must be sworn to as having been made by the party who made them, and that he knew of their correctness at the time they were made, if such party is living. If he is dead, or insane, or beyond the jurisdiction of the court, proof of his handwriting will be sufficient." Holling v. Fannin, 97 Ala. 619, 12 South. 59; McDonald v. Carnes, 90 Ala. 147, 7 South. 919; Murray v. Dickens, 149 Ala. 240, 42 South. 1031; Dickens v. Murray, 163 Ala. 556, 50 South. 1019.

And the knowledge of the recorded transactions by the person making them must have been a personal knowledge—not a knowledge gained by hearsay from others. Dismukes v. Tolson, 67 Ala. 386.

It is clear that these limitations upon the use of shopbook entries as evidence excluded such entries as were made by bookkeepers of transactions reported to them, whether orally or in writing, by the clerks or employés who personally participated therein, unless such clerks or employés testified in corroboration thereof. Ala. Iron Co. v. Smith, 155 Ala. 287, 46 South. 475. This narrow rule of the common law was responsive to the primitive conditions of its origin, and was no doubt fairly well adapted to the simple methods of business and bookkeeping then in vogue.

But, when applied to the conditions of modern business, particularly in the larger towns and cities, it is manifestly inadequate, and is, indeed, an effective bar to the proof of book accounts.

The difficulties in the way of such proof have been thus forcibly stated by Prof. Wigmore:

"Now the ordinary conditions of mercantile and industrial life in some offices do in fact constantly present just such a case of practical impossibility. Suppose an offer of books representing transactions during several months in a large establishment. In the first place, the employés have in many cases changed, and the former ones cannot be found; in the next place, it cannot always be ascertained accurately which employé was concerned in each one of the transactions represented by the hundreds of entries; in the third place, even if they could be ascertained, the production of the scores of employés to attend court and identify in tedious succession the detailed items of transactions would interrupt and derange the work of the establishment, and the evidence would be obtained at a cost practically prohibitory; and finally the memory of such persons, when summoned, would usually afford little real aid. If unavailability or impossibility is the general principle that controls (ante, 1521), is this not a real case of unavailability? Having regard to the facts of mercantile and industrial life, it cannot be doubted that it is. In such a case, it should be sufficient if the books were verified on the stand by a supervising officer who knew them to be the books of regular entries kept in that establishment, and the production on the stand of a regiment of bookkeepers, salesmen, shipping clerks, teamsters, foremen, or other subordinate employés should be dispensed with. No doubt, much should be left to the discretion of the trial court; production may be required for cross-examination, where the nature of the

controversy seems to require it. But the important thing is to realize that upon principle there is no objection to regarding this situation as rendering in a given case the production of all the persons practically as impossible as in the case of death.

"The conclusion is, then, that where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry under the present exception, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility of doing so. Why should not this conclusion be accepted by the courts? Such entries are dealt with in that way in the most important undertakings of mercantile and industrial life. They are the ultimate basis of calculation, investment, and general confidence in every business enterprise; nor does the practical impossibility of obtaining constantly and permanently the verification of every employé affect the trust that is given to such books. It would seem that expedients which the entire commercial world recognizes as safe could be sanctioned, and not discredited, by courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly be one rule for the business world and another for the courtroom. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who as attorneys have already employed and relied upon the same methods. In short, courts must here cease to be pedantic and endeavor to be practical." 2 Wigmore on Ev. § 1530, p. 1895.

Judge Freeman, in his note to Union Bank v. Knapp, 3 Pick. (Mass.) 96, 15 Am. Dec. 181, 193, says:

"It seems conclusively to follow that the entries if shown by competent proof to have been made by one whose duty it was to make them, and at such a time and in such a mode that they must be regarded as original entries, ought to be admitted in evidence, whether the person who made them is produced in court or not, * * * especially when it is shown that his books are generally correct. The presence or absence at the trial of the clerk who made the entries does not make them any more or less a part of the res gestæ. Others as well as he may testify that they were made by him in the course of his duty; that they were made at the time the transactions to which they refer occurred; that they are original entries; that his records and books were * * * faithfully kept; and that his reputation for accuracy and honesty is deservedly high. * * * The clerk, if alive and present, would not be required to remember the particular transactions set forth in his books. Those books might be correctly admitted in evidence, although he had no recollection of * * * the items or transactions in controversy."

It is certain that the current of recent judicial decision has set strongly in favor of receiving in evidence properly authenticated books of account, when supported by the testimony of the persons who made the entries that they made them upon the verbal or written reports of salesmen or employés, rendered to them in due and regular course of business, and within a reasonable time thereafter; and this without calling as witnesses the salesmen or employés whose reported transactions have been thus recorded. Wisconsin Steel Co. v. Maryland Steel Co., 203 Fed. 403, 121 C. C. A. 507; Matson Navigation Co. v. United Engineering Works, 213 Fed. 293, 129 C. C. A. 639; Givens v. Pierson's Adm'x, 167 Ky. 574, 181 S. W. 324, Ann. Cas. 1917C, 956; W. Va. Architects & Builders v. Stewart, 68 W. Va. 506, 70 S. E. 113, 36 L. R. A. (N. S.) 899; Indianapolis, etc., Co. v. Cheyne El. Co., 52 Ind. App. 153, 100 N. E. 468, following Johnson v. Zimmerman, 42 Ind. App. 165, 84 N. E. 541; Corkran v. Rutter, 76 N. J. Law, 375, 69 Atl. 954. See, also, in accord, 3 Jones on Ev. § 569.

As illustrative of the views expressed and applied in the foregoing cases, we quote from Givens v. Pierson's Adm'x, 167 Ky. 574, 181 S. W. 324, Ann. Cas. 1917C, 956, the following:

"In the early history of mercantile affairs it is likely that entries showing sales of merchandise or other articles, or the advancement of money, if that was a part of the business, were made in some permanent book at the time the transaction occurred by the person who attended to it; and even now in many small business establishments this method is pursued and books so kept are of course, accurately speaking, books of original entry.

"But this method of making entries in permanent books at the time the transaction actually happens is impossible in the conduct of large establishments where the usual and customary manner is for the clerk or other person who attends to the transaction with the customer to make an entry of it on a ticket, and on the next day, or perhaps the same day, the entries made on these tickets are transferred by the bookkeeper to some permanent book. But it would be a rare instance in which the bookkeeper would have any knowledge of the transaction except such as he gained from the ticket handed to him to be entered in his books. And so this change in business methods has made necessary the broadening of the rules admitting book entries as substantive evidence, and now the test of the admissibility of this class of evidence does not depend so much on whether the entry offered in evidence was made on a permanent book at the time the transaction actually occurred by the clerk who attended to it as it does on the fact that it was made in a permanent book as a part of the regular course of business and in the usual manner in which the business is conducted, although the entry may be made by a person who has no personal knowledge of the transaction, and whose only information is gained from the tickets furnished

him by the clerks or persons who actually attended to the business."

[2] It is the contention of appellant that the foregoing authorities furnish a rule of reason, based upon practical necessity, which is in harmony with our statute when broadly and rationally construed.

Our statute on this subject was adopted as section 4003 of the Code of 1907, and is as follows:

. "*Books of Account.*—The books of account of any merchant, shopkeeper, physician, blacksmith, or other person doing a regular business and keeping daily entries thereof, may be admitted in evidence as proof of such accounts upon the following conditions:

"(1) That he kept no clerk, or else the clerk is dead or otherwise inaccessible, or for any other reason the clerk is disqualified from testifying.

"(2) Upon proof (the party's oath being sufficient) that the book tendered is his book of original entries.

"(3) Upon inspection by the court, to see if the books are free from any suspicion of fraud."

We think it is clear that the purpose of this statute is to make book entries, of the character specified, independent evidence of an account—that is, evidence per se without the corroborating testimony of the actual transactor of the business—only upon the conditions expressly named in the statute. If, having no clerk, the party has of necessity transacted all business and made all entries himself, and shows that the book tendered is his book of original entries, he need not testify to the correctness of the entries. But, if he had a clerk who made all or some of the entries, the clerk's entries must be identified by the testimony of the clerk, unless he is inaccessible as a witness, or disqualified from testifying. In the latter case, the clerk's entries, made in due course and properly indentified, become admissible as independent evidence. It is, we think, sufficiently clear that the statute does not change, and was not intended to change, the pre-existing requirement of our common law that the party making the entries must have had personal knowledge of the transactions entered by him, in order to render his entries admissible as independent evidence, without corroborating proof of their correctness. We can discover no reason whatever for the discrimination made by the statute in favor of book entries made by a party who keeps no clerk. Perhaps the true explanation of the peculiar phraseology of the statute is to be found in the fact that its formula originated in the common-law courts at a time when all parties in interest were disqualified from testifying at all. 1 Greenl. on Ev. (16th Ed.) p. 209, § 120c. But that disqualification has been long since removed by statute (except as to transactions with or statements by deceased persons), and there is now no reason for any such distinction as to the use of book entries. But the law is so written.

It must be noted, also, that our statute is, with one minor omission, a literal copy of the Georgia statute on this subject. Park's Ann. Code of Ga., vol. 5, § 5769 (sec. 5182) (sec. 3777). It is evidently an adoption of the Georgia statute, which had pre-existed for 30 years at least, and which had been frequently and extensively discussed and construed by the Supreme Court of Georgia.

The Georgia statute did no more than codify the common law as established by the Supreme Court of that state. Bracken v. Dillon, 64 Ga. 243, 37 Am. Rep. 70. In that case it was specifically held that, under the statute, "before the books of a merchant or other tradesman can be used to prove an account, it must appear that he has no higher evidence of its truth, and therefore that he had no clerk who sold the goods, or that the clerk, if he had one, is dead, beyond the jurisdiction, or otherwise inaccessible"; and "inaccessible" was defined as meaning "out of reach of process of the court." The same rule was declared in Dougan v. Dunham, 115 Ga. 1012, 42 S. E. 390, and in Swift v. Oglesby, 8 Ga. App. 540, 70 S. E. 97.

In short, when the maker of the entries is a clerk who does not appear tő have had personal knowledge of their correctness at the time, the entries cannot prove the account without the corroborating testimony of the person who did the acts and reported them for entry by the entry maker. Cases supra; Ala. Iron Co. v. Smith, 155 Ala. 287, 46 South. 475.

[3] We feel bound to give to our statute the well-settled construction already given to its terms, before its incorporation in our Code, by the court of its nativity, since we must presume that our lawmakers were familiar with that construction, and adopted the statute in that sense. Kennedy's Heirs v. Kennedy's Heirs, 2 Ala. 571. And such a construction is peculiarly obligatory upon us here, in view of the fact that it hamonizes with a long line of our own decisions upon this subject prior to the adoption of this statute.

We approve the reasoning and the sound policy of the modern decisions which, unhampered by statutory restrictions, permit the use of shop-book entries in cases like this, when properly kept and authenticated, as independent evidence of the correctness of accounts, without requiring corroborating testimony of the correctness of the items thus entered, though the witnesses thereto are neither disqualified nor inaccessible. But we are constrained to hold that, under our statute, the trial court did not err in excluding the book entries here offered, in the absence of any showing that the clerks and employés who sold the goods or rendered

the services charged against defendant were inaccessible to legal process, or legally disqualified from testifying.

[4] Of course, if the name and identity of the salesmen and mechanics who sold the goods and did the work which are the subject-matter of these entries are unknown to defendant, and cannot be ascertained, they are in a true sense "inaccessible to process"; and, if this fact be shown to the court, their absence would be legally accounted for, and the book entries would be admissible as original evidence, under the very terms of the statute. But no such showing was made.

The case of Donaldson v. Wilkerson, 170 Ala. 507, 54 South. 234, did not involve a construction of the statute, and the holding was merely that a journal containing entries transferred daily from blotters was the first permanent entry of the transactions in question, and was admissible without the production also of the blotters, which were but temporary memoranda.

The case of Shirley v. Sou. Ry. Co., 73 South. 433,[1] did not involve the admission of book entries in proof of an account between the parties, and therefore presented no question under section 4003 of the Code. What it did decide was that a book entry made in the regular course of business, at or about the time of the transaction recorded (the payment of miners for a certain day) was admissible in a suit between third persons as evidence of the collateral fact of the miners' whereabouts on that day, whether they were in the mines or at another place. That opinion, by Mr. Justice Thomas, presents a very full and analytical discussion of the authorities, and holds, in accord with the better reasoned and more modern view, that the admissibility of such an entry for such a purpose does not depend upon a showing that the entrymaker had personal knowledge of the fact recorded, and adds, by way of dictum, that the persons who report business transactions in due course to a bookkeeper who enters them on the books in due course need not be called as witnesses in corroboration of the entries, if their production as witnesses is practically inconvenient.

In the Shirley Case it is expressly pointed out that—

"The rule declared in Donaldson v. Wilkerson, 170 Ala. 507, 54 South. 234, Dickens v. Murray & Peppers, 163 Ala. 556, 559, 50 South. 1019; and Dickens v. Murray & Peppers, supra, governs in suits between parties where the account book of entries made in the regular course of business between them, properly authenticated, is introduced in evidence."

[5] It was not a valid objection to the entries offered that they were made on loose-leaf ledger sheets, not fastened together by permanent bindings. Taylor v. Tucker, 1 Ga.

231; United Grocery Co. v. Dannelly (S. C.) Ann. Cas. 1914D, 489, note; Shirley v. Sou. Ry. Co., supra; Shepherd v. B. T. & H. Co., 198 Ala. 275, 73 South. 498.

[6] An alternative contention of appellant's counsel is that the book entries in question were in any case admissible in corroboration of the testimony of a member of plaintiff's company that he had several times presented statements of account to defendant, which were copied from these ledger sheets.

"Books of account or book entries generally are frequently admitted for the purpose of corroborating or impeaching a witness' testimony, although not supported by proof of a character to render them admissible as substantive evidence for the purpose of proving items of account or other contents." 17 Cyc. 398 (v).

If there had been any question as to the correctness of the transcription of the account stated to defendant from the book entries thereof, no doubt the principle above quoted could be invoked. But there was no such question, and mere corroboration is not permissible in the absence of some form of impeachment. The question here was not whether the account was a correct copy of the items on the books, but whether the items themselves were correct charges. The authorities cited to the quoted text from Cyc. do not support appellant's contention in this regard, and we do not think the ledger sheets were admissible for such a purpose.

The judgment will be affirmed.

Affirmed.

All concur, except MAYFIELD, J., who dissents from parts of the opinion.