198 So. 157

**PINKERTON v. STATE.**

**6 Div. 663.**

Court of Appeals of Alabama.

June 29, 1940.

Rehearing Denied Aug. 6, 1940.

Morel Montgomery, of Birmingham, for appellant.

Thos. S. Lawson, Atty. Gen., and Chas. L. Rowe and Wm. H. Loeb, Asst. Attys. Gen., for the State.

474

SIMPSON, Judge.

This appeal is from a final order of the Judge of the Circuit Court of Fayette County, denying the petition of Daniel Pinkerton for writ of habeas corpus. This quoted excerpt from the brief of distinguished counsel for appellant sufficiently states the facts:

"This appellant was convicted in the Circuit Court of Fayette County, Alabama, November 12, 1936, he was fined $50.00 by the jury, there was judgment for said fine, court costs and also as additional punishment 90 days hard labor was assessed by the court. Appeal was taken, but the appeal and result is moot. On March 4th, 1938, at Kilby Prison the appellant began his prison sentence. On March 7th, 1938, this appellant was granted a parole from his servitude by the then Governor, Bibb Graves. He was released from prison, returned to his home in Fayette County. He remained at large out of the immediate prison walls and confinement until February 13th, 1940, or for 23 months following this release granted by the Governor.

"February 13th, 1940, he was arrested by the Sheriff of Fayette County, Alabama, by virtue of a warrant issued by the Alabama State Convict Department, to-wit; Wm. E. Persons, director of Prisons. The now created Alabama State Board of Pardon and Paroles had caused said warrant to issue it being alleged that his parole was by them revoked because appellant had or was about to lapse into criminal ways. He was arrested, confined to jail and seeks his release by writ of Habeas Corpus.

"The appellant contends he should be discharged from custody, his liberty restored and that the lower Court in this cause erred in its judgment denying or refusing the relief and denying his right to discharge from custody."

██ The predominant question of law presented here is succinctly stated in the brief of the able and astute Assistant Attorney General:

"Suffice it to say that this agreed statement of facts seeks to present the following question:

"Whether the State Board of Pardons and Paroles, created by Act No. 275, S. 186, approved August 25, 1939 (General Acts, 1939, p. 426) enacted in conformity to an amendment adopted at the election held pursuant to Act No. 8, S. 4, passed by the Senate and House of Representatives as amended on March 29, 1939 (General Acts, Special Session, 1939, p. 8), has the authority to revoke the parole for good behavior of a convict, where such parole was not the parole of an indeterminate sentence and was granted by the Governor under Act No. 25, H. 91, approved February 1, 1935 (General Acts, 1935, p. 42) prior to the effective date of the act creating such State Board of Pardons and Paroles, where the said Board has reasonable cause to believe that such convict had lapsed, or was probably about to lapse, into criminal ways or because he had violated the conditions of his parole in an important respect."

It may be well to observe, before entering a discussion of the question, that reason alone must be the light to guide us here, there being a scarcity of legal pronouncement dealing with the subject. After careful study of the question and attentive consideration to the briefs of counsel for the parties, this court is of the conclusion that the query thus posed by the Assistant Attorney General, with certain qualifications, hereinafter expressed, must be answered in the affirmative.

The amendment, supra, to Section 124 of the Constitution of Alabama is: "Section 124. The Governor shall have power to grant reprieves and commutations

to persons under sentence of death. The Legislature shall have power to provide for and *to regulate* the administration of pardons, paroles, remission of fines and forfeitures, and may authorize the courts having criminal jurisdiction to suspend sentence and to order probation. No pardon shall relieve from civil and political disabilities unless specifically expressed in the pardon." (Italics ours.) Gen.Acts Spec.Sess.1939, p. 8, No. 8, Sec. 1.

The prerogative thus granted to the Legislature, upon adoption of this amendment, invested it with the "administration of * * * paroles" of every kind, whether in effect previous to the adoption of this amendment or granted subsequent thereto.

The purpose of the amendment was to adopt a new system by which the State should administer "pardons, paroles [and] remission of fines," etc., and whereby such matters—thus disposed to legislative authority—were transferred from executive power. Responsive to and acting under the authority thus invested, the Legislature, by due enactment, created a "Board of Pardons and Paroles" Gen.Acts 1939, p. 426 et seq., No. 275. In this Act there is a provision: "Such Board shall also be charged with the duty of supervising *all prisoners released on parole* from the jails or prisons of the state, and * * * of determining whether violation of parole * * * conditions exist in specific cases and, in the case of parolees, deciding what action should be taken with references thereto." (Italics supplied.) P. 427, Sec. 5.

From this quoted section of the Act, it is observed that the duty and authority of this newly created Board are extended to "*all* prisoners released on parole," and, in our opinion, these words have their evident meaning, and do comprehend "*all* prisoners," whether theretofore or thereafter "released on parole." Our opinion is further strengthened by the all-inclusive language not only of Section 5, supra, but also of Section 12 of the Act—here pertinent: "Whenever there is reasonable cause to believe that a prisoner *who has been paroled has violated his parole,* the Board at its next meeting shall declare such prisoner to be delinquent and time owed shall date from such delinquency." (Italics ours.) P. 430.

And, as quoted from the illuminating brief of the Assistant Attorney General:

"If it had been the legislative intent to limit the authority of the Board of Pardons and Paroles to those convicts who had been placed on parole by it, it would have been a simple matter to have enacted Section 5 so as to read: 'Such Board shall also be charged with the duty of supervising all prisoners released on parole *by such Board* from the jails and prisons' etc. and to have written into Section 12 the words, 'whenever there is reasonable cause to believe that a prisoner who has been paroled *by such Board* has violated his parole' etc., but we find no such limitations inserted."

Under the broad terms of the amendment it was clearly within legislative competence to so deal with the subject, and, as we conceive it, administration and supervision over these prisoners are now vested exclusively in the Board of Pardons and Paroles and divested out of the Executive Department of the State, and now beyond the power of the Governor thereof. Administration of paroles, etc., having been transferred from the Governor to said Board, by process of the two enactments hereinabove mentioned, concomitant authority is necessarily invested in said Board, by the Act creating it, to revoke such paroles.

To adopt the position that the Board's authority in the matter of paroles is limited to those granted by it alone, and that it does not include those prisoners on parole by executive orders prior to the creation of said Board, would be to say that eo instante, upon the adoption of said Constitutional amendment, the irrevocable and permanent release was effected of the countless hundreds of convicts (and former criminals) now on parole by former executive authority, irrespective of whether or not their maximum term of servitude had expired. Such a position is unreasonable, would be against public welfare, and, we believe, contrary to what should be the manifest interpretation of the two enactments, as well as the controlling legislative intent inherent at the time of their origination and passage.

This court is therefore of the opinion that the Board of Pardons and Paroles has like and complete jurisdiction and authority over all parolees, until the maximum sentence shall have been served (or

unless sooner pardoned), in the manner hereinafter demonstrated.

■ The assertion of appellant that the Legislature was without authority to deal with convicts then on parole does not impress us. In addition to the consistency and logic of the position to the contrary, as demonstrated above, it may be added that parole is not a right, and has never been so regarded, but is a privilege, and the procedure or conditions for the retaking of parole violators may be altered after parole so as to affect the parolee, so long as the punishment is not increased. Malloy v. South Carolina, 237 U.S. 180, 184, 35 S.Ct. 507, 59 L.Ed. 905; Duncan v. Missouri, 152 U.S. 377, 382, 14 S.Ct. 570, 38 L.Ed. 485; People v. Hunt, D.C., 25 F.Supp. 647.

The conclusion having been reached that the authority of the Board of Pardons and Paroles is all-inclusive in matters of paroles and applicable alike to former parolees, as well as paroles inaugurated by the Board itself, it must logically follow that all parolees are now on a similar status, the laws and regulations regarding the paroled convicts of Alabama applying equally and alike to all of them.

■ We are then met with the insistence of appellant, through diligent counsel, that, in the instant case, the appellant, Pinkerton, had already, after adoption of the new system of paroles, etc., and prior to the attempted revocation of his parole by said Board, served "outside of prison walls," while on parole, his maximum sentence—that, therefore, he should be at liberty, having served the full sentence imposed upon him by law. In this we concur.

Section 7 of the Act under discussion provides: "No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the Board is of opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society. If the Board shall so determine, such prisoner shall be allowed to go upon parole *outside of prison walls* and inclosure upon such terms and conditions as the Board shall prescribe, *but to remain while thus on parole in the legal custody of the warden of the prison from which he is paroled, until the expiration of the maximum term specified in his sentence,* or until he is fully pardoned in the manner hereinafter provided." (Italics ours.) Gen.Acts 1939, p. 428.

This Section is quite similar to a provision of the United States statute dealing with the parole of federal prisoners. (18 U.S.C.A. §§ 716, 716b), and is so strikingly exact in verbiage to the New York statute, in so far as here pertinent, relating to parole of convicts, as to make it appear that it was copied from the New York statute. Correction Law, Consol. Laws, c. 43, § 213.

In construing the provision of federal law, somewhat similar to Sec. 7 of the Alabama Act, it has been held by the United States Supreme Court in Anderson v. Corall, 263 U.S. 193, page 196, 44 S.Ct. 43, 44, 68 L.Ed. 247: "While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term, less allowance, if any, for good conduct. While this is an amelioration of punishment, it is in legal effect imprisonment."

Similar decisions of the Federal Courts have subsequently proceeded from this authority. People v. Hunt, supra; United States ex rel. Nicholson v. Dillard, 4 Cir., 102 F.2d 94, 95; 18 U.S.C.A. §§ 716 and 716b annot.

The doctrine has been correspondingly affirmed by the Court of Appeals of New York, construing the section of the New York Act from which Section 7 seems to have been taken, in the cases of People v. Twombly, 228 N.Y. 33, 126 N.E. 255; People ex rel La Placa v. Heacox, 238 App. Div. 217, 263 N.Y.S. 407.

Since Section 7, supra, of the Alabama Act was manifestly appropriated from one of the two acts (N.Y. or U.S.), supra, it will be (if appearing to this court sound reasoning—and we think so) given the legal construction already imposed upon the parent act by the courts of its origin. Lovemen, Joseph & Loeb v. McQueen, 203 Ala. 280, 82 So. 530; Ex parte Sloss-Sheffield Steel & Iron Co., 207 Ala. 219, 92 So. 458; Galloway Coal Co. v. Stanford, 215 Ala. 79, 109 So. 377.

It is the court's view, therefore, that the status of a prisoner while under conditional release—viz., on parole by authority of Section 7, and other provisions of the Alabama statute—was that of a

"prisoner on parole," and while this was an amelioration of punishment it was, nonetheless, punishment and imprisonment in legal effect.

It is urged upon us by the Assistant Attorney General that the case of Fuller v. State, 122 Ala. 32, 26 So. 146, 45 L.R.A. 502, 82 Am.St.Rep. 17, controls the decision here to the result that a prisoner paroled by previous authority (the Governor of Alabama) may be rearrested and returned to custody—upon revocation of his parole by the Board of Pardons and Paroles—and be required to serve that portion of his sentence which was unexpired when his parole was granted, even though the period of his sentence would have ended but for the suspension thereof by parole. This position is fraught with profound inconsistency. Under such a situation the State would have two classes of convicts on parole—with the Board of Pardons and Paroles claiming equal jurisdiction over both by virtue of the same Act—the first being those convicts paroled by executive prerogative prior to the Parole Act and subject to having their paroles revoked by said Board and to being rearrested and forced to serve such unexpired part of the sentence as remained when so released from custody, even though the sentence would have long ago expired but for such parole; the second being those convicts released on parole by the Board of Pardons and Paroles—who, by the terms of the Act creating said Board are serving "outside of prison walls"— and, when the period of their sentences shall have expired (even though a portion thereof be executed while on parole), they are at liberty. Such a situation would not only present inconceivable discrimination against the first class of parolees mentioned, but is most illogical. If jurisdiction of the Board of Pardons and Paroles, under the present Act, is also to comprehend authority to supervise and regulate the conduct of convicts heretofore paroled by the several Governors of Alabama, then this authority is limited and prescribed by the recitals of said Act—and by its terms, as heretofore pointed out, (controlled by the cited decisions of eminent courts of the land), a paroled convict goes "upon parole outside of prison walls [etc.], but to remain while thus on parole in the legal custody of the warden [etc.], until the expiration of the maximum term specified in his sentence." Under such circumstances, unless the parole be revoked, the punishment is being executed.

Harmonious to what we have said, therefore, it is the opinion of this court that:

First. As to all prisoners heretofore, now or hereafter released upon parole, the Board of Pardons and Paroles has the same, and like, authority and jurisdiction, which, as we construe the Act creating it, is complete and exclusive, until the convict shall have served the maximum sentence imposed upon him (or unless sooner pardoned).

Second. From and after the approval of the Act creating the Board of Pardons and Paroles, a convict, while on parole, "outside of prison walls," is executing his sentence, just as if he were inside of prison walls—"until the expiration of the maximum term specified in his sentence" (or, of course, unless there should be prior revocation of said parole or unless sooner pardoned).

It appears that prior to the purported revocation of the parole in the case at bar, by the Board of Pardons and Paroles, February 13, 1940, and subsequent to approval of the Act creating said Board, the appellant (Pinkerton) had already served his full sentence of the law, which thereby divested the Board of jurisdiction over him or control of his conduct. It results therefore that the learned trial judge erred in denying the writ prayed for. The judgment appealed from is therefore reversed, set aside and held for naught and judgment is here rendered ordering and directing the release and discharge of appellant from custody.

Reversed and rendered.

## On Rehearing.

It is argued by appellee, in application for rehearing, that Section 12 of the Act creating the State Board of Pardons and Paroles (supra, 430) vests said Board with "authority, upon revocation of a parole, to require the prisoner to serve *all of the time remaining* when he was released on parole." This would be to hold that the Board is vested with exclusive authority of determining whether or not a parolee, upon revocation of parole, be allowed the time served while on parole to apply as a credit on his term of servitude. To so hold would be in conflict with the law, already pronounced on the subject, as well as contrary to the evident meaning of the statute. The Board has no discretion in

478

this regard except to shorten the term of punishment if it should so desire.

Under the Parole Act, now existing, a paroled prisoner endures a part of his punishment within prison walls and a part thereof within the terms of his parole. When the sum total of these two punishments equals that fixed by the sentence, the question of his release is not for the Board, but he must be discharged. Clark v. Surprenant, 9 Cir., 94 F.2d 969. Anderson v. Corall; People v. Hunt, and United States ex rel. Nicholson v. Dillard, all supra.

Such a conclusion is not only harmonious to decisions construing similar acts in other jurisdictions, but, likewise, is wholly consistent with Section 12 of the Alabama Act, where it is provided that the Board, for cause, may "declare such prisoner to be delinquent and time owed shall date from such delinquency." Under its provisions the Board may, after this declaration of delinquency, require such prisoner to serve such time as is then unexecuted ("or such part thereof as it may determine"), of course, allowing the prisoner as credit, on the remaining part due to be executed, the time already served, whether outside or inside of prison, to be "calculated from the date of delinquency."

In this cause the appellant was declared delinquent by the Board on February 13, 1940. Subsequent to said date and since the Act under discussion became effective, he had already endured the maximum sentence imposed upon him. The Board, at that time, had, therefore, lost control or jurisdiction of the prisoner and he then stood discharged by operation of law.

The application is overruled.

Opinion extended and application overruled.