16723

BEARDEN v. STATE
(74 S. E. (2d) 912)

*James Bearden, Appellant,* of Columbia, *in Person,* 

*Messrs. T. C. Callison, Attorney General,* and *William A. Dallis, Assistant Attorney General,* of Columbia, *for Respondent,* 

March 2, 1953.

OXNER, Justice.

This is a proceeding in habeas corpus. Appellant alleged in his petition that he was being unlawfully detained in the South Carolina Penitentiary and asked that he be discharged. A return was duly filed by respondent and a hearing had on June 6, 1952. Thereafter on August 9, 1952, the County Judge dismissed the petition and remanded appellant to the custody of the Superintendent of the South Carolina Penitentiary. The question for determination, as agreed upon by the parties, is as follows:

"The sole question raised by this appeal, is whether or not, the Probation, Parole and Pardon Board had authority to revoke the parole of the petitioner, the question of the sufficiency of the evidence to sustain the action of the Board not being at issue."

At the November, 1938, term of the Court of General Sessions for Oconee County, appellant was convicted of murder. A jury recommended mercy and a sentence of life imprisonment was imposed. On January 2, 1945, after approximately six years of penal servitude, he was paroled by Governor Johnston "during good behavior". It was further stipulated in this parole: "The Governor of the State is to be the sole judge of what is meant by good behavior." A few days later appellant was released from the Penitentiary. On June 25, 1947, Governor Thurmond, who had then become Chief Executive of the State, directed that appellant and all others similarly released under parole be placed under the supervision of the South Carolina Probation, Parole and Pardon

Board. He stated in this order that effective as of that date, "each of these parolees shall be supervised by the South Carolina Probation, Pardon and Parole Board in the manner, and subject to all provisions of the Parole Statute."

It is stated in the order of the County Judge, and not excepted to by appellant, that commencing in August, 1947, appellant submitted regular monthly reports, as required by the Board, for a period of approximately two years, that in May, 1949, he was involved in an altercation in Oconee County and was arrested in the State of Virginia in August, 1949, under a warrant charging the violation of the conditions of his parole; and that thereafter at a hearing held by the Probation, Parole and Pardon Board on August 25, 1949, at which appellant was represented by counsel, the parole was revoked by the Board and he was recommitted to the South Carolina Penitentiary. On May 26, 1952, approximately three years later, the habeas corpus proceeding now before us was commenced.

As pointed out in the agreed statement of the question involved on this appeal, no issue is raised as to "the sufficiency of the evidence to sustain the action of the Board" in revoking appellant's parole. We may, therefore, assume that there was a violation of the specified condition of "good behavior". Appellant's sole contention is that the Probation, Parole and Pardon Board was without authority to make the revocation. His position is that under the terms of his parole, this prerogative was expressly reserved to the Governor.

In 1945, when appellant was released, there were two methods by which a prisoner could be paroled. Section 3099 of the 1942 Code provided: "In any case that may be deemed proper by the Governor, he may suspend sentence or parole any prisoner upon such terms or conditions as he may deem just in the exercise of executive clemency."

In 1941 the General Assembly created the South Carolina Probation and Parole Board, 42 St. at L. 1456, which was authorized, with the approval of the Governor, to parole any

prisoner convicted of a felony who had served a certain specified portion of the term for which he was sentenced. Such parolee was required to remain in the legal custody of the Board. It was provided in Section 11 of this Act that said Board "shall be the sole judge as to whether or not a parole has been violated and no appeal therefrom shall be allowed." This Act, with amendments, now constitutes Chapter 10 of Title 55, Code of 1952.

It may not be amiss to add that in 1949, Article 4, Section 11 of the Constitution was amended so as to restrict the clemency power of the Governor to granting reprieves and commuting death sentences to life imprisonment. All other clemency power was vested under this constitutional amendment in a Probation, Parole and Pardon Board, which was authorized to "grant pardons, issue paroles and admit to probation under such terms and conditions as it may determine".

Appellant was paroled by Governor Johnston under the power vested in him by Section 3099 of the 1942 Code and by Article 4, Section 11 of the Constitution before the 1949 amendment. This was not a personal favor or private act of grace but the exercise of a public function. 67 C. J. S., Pardons, § 6. Evidently Governor Johnston preferred to pass upon the question of parole without the aid of the Probation, Parole and Pardon Board, which was then known as the Probation and Parole Board. He further determined that the Governor should be "the sole judge of what is meant by good behavior." He was at liberty to exercise this function so long as he remained in office but could not bind his successor to do so. Shortly after assuming office, Governor Thurmond apparently concluded that it would not be in the public interest for him to undertake the supervision of parolees or to pass upon the question of parole violations and transferred these duties to the Probation, Parole and Pardon Board. In other words, the prerogative reserved in appellant's parole to the Governor was transferred by a successor to an agency of the executive department. There is

no showing in the record that the Board undertook to impose additional terms or conditions. In fact, it would have been without authority to do so. *United States ex rel. Humphries v. Hunt,* Warden, D. C., 15 F. Supp. 608. The result of the action of Governor Thurmond was, in effect, merely to change the procedure to be followed in revoking a parole. There is no claim that the new procedure did not afford appellant an ample opportunity for a fair hearing. The position taken by him is rather technical. As heretofore stated, there is no claim that the evidence was insufficient to sustain the finding of a violation of the condition upon which the parole was issued. The sole contention is that the Governor should have made the determination rather than the Board. In considering this question it must be kept in mind that a pardon or parole is granted, not as a matter of right, but as a matter of grace bestowed by the government through its duly authorized officers or departments.

It has been generally held that after a prisoner has been placed on parole, the procedure to be followed in revoking such parole may be changed without violating any constitutional right of the parolee. In *Voorhees v. Cox,* Warden, D. C., 54 F. Supp. 15, after petitioner was paroled, a Federal statute providing for a hearing before the United States Board of Parole on the question of revocation was changed so as to permit such hearing to be held before an examiner appointed by the Board. The Court concluded that this was only a change in procedure which Congress could make without violating petitioner's rights. The courts have also sustained the validity of an amendment to a New York statute whereby the right to a jury trial as to the facts concerning the violation of a parole was abolished and the power of passing upon parole violations vested in a board of parole. It was held that such amendment was not *ex post facto* law as to those paroled prior to its enactment. *People ex rel. Kurzynski v. Hunt,* 250 App. Div. 378, 294 N. Y. S. 276; *Magistro v. Wilson, Warden,* 253 App. Div. 48, 300 N. Y. S. 1216; *People ex rel. Tower v. Hunt, Warden,* D. C., 36 F. Supp. 49.

A situation similar to the one before us was presented to the courts of Alabama in *Pinkerton v. State,* 29 Ala. App. 472, 198 So. 157, 159, certiorari denied 240 Ala. 123, 198 So. 162. The petitioner in that case was convicted in 1936 and paroled by the Governor in 1938. In 1939 the constitution of Alabama was amended so as to take away from the Governor all clemency power except to grant reprieves and commutations to persons under sentence of death and to empower the legislature to regulate the administration of pardons and paroles. Under this authority, the legislature of Alabama in 1939 created a State Board of Pardons and Paroles which was charged with the duty of supervising all prisoners released on parole and of determining whether there had been any parole violations. The petitioner argued that the legislature was without authority to place those paroled by the Governor under the supervision of the Board of Pardons and Paroles. In denying this contention, the Court said "that parole is not a right, and has never been so regarded, but is a privilege, and the procedure or conditions for the retaking of parole violators may be altered after parole so as to affect the parolee, so long as the punishment is not increased."

The foregoing authorities fully sustain the validity of the action of Governor Thurmond in placing appellant and others similarly paroled under the jurisdiction of the Probation, Parole and Pardon Board. It is our conclusion that by virtue of this order, the Board had authority to revoke the parole of appellant.

Affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.